Julius W. MARACALIN, Plaintiff,

v.

UNITED STATES, Defendant.

No. 01–375C.

United States Court of Federal Claims.

June 17, 2002.

Julius W. Maracalin, pro se.

Claudia Burke, Commercial Litigation Branch, Civil Division, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Robert D. McCallum, Assistant Attorney General, United States Department of Justice, attorneys of record for the defendant. John Hieronymus, Asset Forfeiture Section, Robert Porzeinski, Asset Forfeiture Section, United States Drug Enforcement Agency, of counsel.

## OPINION

HORN, Judge.

Plaintiff, Julius Warner Maracalin, appearing *pro se*,[1] has filed a complaint against the United States requesting relief for constitutional and statutory violations and for tort injuries he allegedly sustained during his criminal prosecution and conviction in the United States District Court for the Middle District of Louisiana for conspiracy to possess with the intent to distribute and conspiracy to distribute cocaine base ("crack cocaine"), as well as distribution of cocaine base.

Plaintiff requests that this court reverse his conviction in the District Court and order his immediate release from prison based on allegations that: (1) the District Court exercised jurisdiction over his plea agreement in violation of the Tucker Act; (2) the United States Drug Enforcement Agency (DEA) and local law enforcement agents, operating under the authority of defective warrants, violated plaintiff's due process rights by subjecting him to an illegal search and seizure and (3) the District Court, DEA and United States Attorney's Office violated 18 U.S.C. § 1506 (1994) by retroactively altering the indictment and warrants appearing in the District Court records. Plaintiff also requests damages and recovery of property ordered forfeited by the District Court on the grounds that the seizure of his property by DEA agents and the forfeiture order entered by the District Court constituted an illegal taking in violation of the Fifth Amendment. Plaintiff further requests $100,000,000.00 in damages as compensation for Fourth and Fifth Amendment violations, and for intentional torts allegedly perpetrated upon him by federal and local law enforcement agents. Finally, on behalf of his two boys and his mother, plaintiff requests $1,000.00 a day for every day of his incarceration as tort damages for "depriving them kids from they father and depriving a mother of her son [sic]."

Defendant filed a motion to dismiss, alleging that the court is without subject matter jurisdiction to hear this case and that the complaint fails to state a claim upon which relief can be granted. Based on the complaint, the briefs submitted by the parties and the attached exhibits, the court finds that it does not have jurisdiction over this action and, moreover, that the plaintiff is barred by the doctrine of res judicata from raising the claims included in his complaint in this court.

## FINDINGS OF FACT

On January 18, 1995, a grand jury sitting in the United States District Court for the

---

1. The court recognizes that the plaintiff is proceeding *pro se*, and, accordingly, the plaintiff is entitled to liberal construction of his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). The United States Supreme Court reiterated this standard in *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977), and in *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Plaintiff's scattershot organization and unstructured sentences, however, make distilling plaintiff's causes of action and requests for relief difficult. The court has construed plaintiff's filings liberally and has attempted to give its best efforts to extract the legal theories plaintiff appears to assert.

Middle District of Louisiana indicted Julius "Big Warner" Maracalin and charged him with five counts, including conspiracy to possess cocaine base with intent to distribute, conspiracy to distribute cocaine base, and distribution of cocaine base. On January 19, 1995, a Federal Magistrate issued a search warrant authorizing the DEA to search Mr. Maracalin's property. During the night of January 20, 1995, the DEA and local law enforcement officials searched Mr. Maracalin's residence and arrested him. At that time, the DEA confiscated from Mr. Maracalin a portion of the property that forms the basis for this complaint.[2]

The grand jury issued a superceding indictment on January 31, 1995. On May 8, 1995, a motion to suppress the search and arrest was denied by the District Court. On May 12, 1995, Mr. Maracalin entered a plea agreement.[3] He pled guilty to four of the counts with which he was charged and agreed to forfeit "any and all assets and property, or portions thereof, subject to forfeiture," pursuant to 21 U.S.C. §§ 853(a)(1), and 853(a)(2).

On August 28, 1995, plaintiff was sentenced to a term in prison and fined $100,000.00.[4] In orders dated November 16, 1995, and February 13, 1996, the District Court ordered the forfeiture of the seized items to the United States. On June 22, 2001, plaintiff filed this action, and on September 20, 2001, he filed an amendment to his complaint in this court.

## DISCUSSION

As noted above, prior to filing the complaint currently before the court, plaintiff filed another complaint in this court, Case No. 00–715C, which Judge Bruggink dismissed for lack of subject matter jurisdiction. In his earlier case, Mr. Maracalin requested readjudication of his original criminal indictment, reversal of his conviction and $2,500,000.00 in damages based on alleged violations of his Fourth, Fifth and Fourteenth Amendment rights including: (1) illegal search and seizure based on an allegedly faulty warrant by both state and federal officials; (2) illegal taking without just compensation and (3) violations of 18 U.S.C. § 1506. Plaintiff also based his request for damages on tort theories, including false imprisonment.

The United States Supreme Court summarized the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) as follows:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ..." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876); *Lawlor v. National Screen Service Corp.*, 349

---

2. The forfeited property that Mr. Maracalin seeks to have returned includes three automobiles, two parcels of land in Brusly, Louisiana, the contents of a safe deposit box totaling $199,700.00, currency found in the searched premises totaling $69,745.00, currency found in the searched premises totaling $100,062.00, a certificate of bank deposit totaling $15,000.00, and the currency and monetary interests contained in a Plaquemine Bank and Trust Company account totaling $4,678.00. Defendant also seeks the return of two guns and a draft check for $7,469.00 taken from his residence.

3. In a prior proceeding before this court, *Maracalin v. United States*, Case No. 00–715C (Fed.Cl. Nov. 27, 2000), regarding the same set of opera-

tive facts, Mr. Maracalin argued that he was tricked into signing the plea agreement, but he alleges no such facts in this complaint.

4. According to the complaint filed by plaintiff in his prior case in this court, Case No. 00–715C, plaintiff's conviction was affirmed in part by the United States Court of Appeals for the Fifth Circuit, but remanded to the trial court to make factual findings regarding plaintiff's ability to pay the $100,000.00 fine imposed. *See also United States v. Maracalin*, 132 F.3d 1453 (5th Cir.1997) (table). Plaintiff stated that the District Court reimposed the $100,000.00 fine. *See also United States v. Maracalin*, 199 F.3d 439 (5th Cir.1999) (table).

U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621–624 (2d ed.1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); *id.,* § 48 (bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co., supra,* at 49, 18 S.Ct. 18; *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (footnote omitted).

The doctrine of res judicata requires, as a prerequisite, that a "full and fair opportunity to litigate" the claims at issue is provided. *See Poyner v. Murray,* 508 U.S. 931, 933, 113 S.Ct. 2397, 124 L.Ed.2d 299 (1993) (quoting *Montana v. United States,* 440 U.S. at 153–54, 99 S.Ct. 970). The Supreme Court has established that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *see also In re Deckler,* 977 F.2d 1449, 1452 (Fed.Cir.1992); *Mark Smith*

*Constr. Co. v. United States,* 15 Cl.Ct. 32, 35–36 (1988). By affording a claimant only one opportunity to obtain redress, the doctrines conserve judicial resources, foster reliance upon judicial decisions, and protect litigants from vexatious and needless litigation. *Id.* at 36; *Martin v. United States,* 30 Fed.Cl. 542, 546, *aff'd,* 41 F.3d 1519 (Fed.Cir.1994) (table); *Lins v. United States,* 4 Cl.Ct. 772, 777, *aff'd,* 758 F.2d 666 (Fed.Cir.1984) (table).

■ The United States Court of Appeals for the Federal Circuit has held that application of the doctrine of res judicata, or claim preclusion, requires (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) involving the same parties or their privies and that (3) the claim from one action is based on the same set of transactional facts as were raised or that could have been raised in the prior action. *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360, 1362 (Fed.Cir.2000), *reh'g and reh'g en banc denied* (2000); *Int'l Nutrition Co. v. Horphag Research, Ltd.,* 220 F.3d 1325, 1328 (Fed.Cir. 2000) (defining the third element as involving "the same claims that were raised, or could have been raised, in the prior action."); *see also Amgen, Inc. v. Genetics Institute, Inc.,* 98 F.3d 1328, 1331 (Fed.Cir.1996). Further clarifying the third requirement in terms of claim preclusion, the Federal Circuit wrote:

> [a] subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, "through the exercise of diligence, could have been litigated in a prior suit." [*Restatement (Second) of Judgments* § 24 (1982).] What constitutes the subject matter of a suit depends on the factual basis of the complaint, and any cause of action that arises out of the same facts should be litigated in the same action. *See [Barr v. Resolution Trust Corp.,* 837 S.W.2d 627 (Tex.1992)] id.* at 630; *see also Flores v. Edinburg Consol. Independent School Dist.,* 741 F.2d 773, 777 (5th Cir. 1984).

*United Tech. Corp. v. Chromalloy Gas Turbine Corp.,* 189 F.3d 1338, 1344 (Fed.Cir. 1999).

■ In the present case, neither plaintiff nor defendant identified Mr. Maracalin's ear-

lier case dismissed by Judge Bruggink or addressed the defense of res judicata. While it is true that res judicata is generally deemed waived if not pled in a timely manner, the Supreme Court has held that sua sponte findings of res judicata might be appropriate in special circumstances. *See Arizona v. California,* 530 U.S. 392, 413, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000). In *Arizona v. California,* the Court stated:

> Most notably, "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but it is also based on the avoidance of unnecessary judicial waste."

*Id.* (quoting *United States v. Sioux Nation of Indians,* 448 U.S. 371, 432, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (Rehnquist, J., dissenting)); *see also Stearn v. Dep't of the Navy,* 280 F.3d 1376, 1380–81 (Fed.Cir.2002). In the case at bar, court records put this court on notice that Judge Bruggink has previously decided the issues presented by the plaintiff. Adhering to the interests of judicial economy, the court, therefore, sua sponte raises the doctrine of res judicata in this action.

Both cases brought by Mr. Maracalin, Case No. 00–715C and the case currently before the court, Case No. 01–375C, are based on the same set of transactional facts, which are those facts generally related to the search of plaintiff's home, his subsequent arrest, indictment and conviction, the forfeiture of his property and certain of his allegations of procedural improprieties allegedly perpetrated by officers of the District Court and the respective enforcement agencies. In the prior action dismissed by Judge Bruggink, plaintiff requested reversal of his conviction based on allegations that (1) "[t]he Petitioner Fifth Amendment constitutional right have been violated," (2) "the district court violated the Tucker Act, 28 U.S.C. § 1491 by accepting the Petitioner pleaagreement [sic]," and (3) "[t]he judge Frank J. Polozola, The U.S. Attorney office, The Clerk office, and DEA agent Robert Breard have violated Title 18 § 1506 Alteration of Record." Furthermore, in both actions, plaintiff requested tort damages for false imprisonment and compensation due to the government taking his property illegally and using his automobile. Therefore, it is clear that the claims raised in both cases are virtually identical.

The only remaining question is whether the jurisdictional decision issued by Judge Bruggink on November 27, 2000, qualifies as a decision "on the merits." Traditionally, a judgment on the merits has been defined as a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction...." *Southern Pac. R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). The United States Court of Appeals for the Federal Circuit has held that a court's final decision regarding its jurisdiction is a decision on the merits. *Ponder v. United States,* 117 F.3d 549, 553–54 (Fed.Cir.1997) (holding that summary dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(4) of the Rules of the United States Court of Federal Claims is a decision on the merits.), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998).

■ In the case currently before this court, Case No. 01–375C, plaintiff filed his claims against the same defendants and bases his claims on the same set of operative facts as he did in his case dismissed by Judge Bruggink, Case No. 00–715C. The jurisdictional issues in plaintiff's present complaint also are the same as those in his claim dismissed by Judge Bruggink. These duplicated issues include whether the Court of Federal Claims has the jurisdiction to: (1) review a decision issued by a district court; (2) review decisions of criminal liability; (3) award damages based on violations of civil rights and (4) hear matters sounding in tort. After careful analysis of plaintiff's prior and present claims, the court finds that the plaintiff's present case meets the three prong test for applicability of res judicata, or claim preclusion, expressed in *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d at 1362. Therefore, because plaintiff already has had his day in court regarding these issues, the court holds

that his current claims are barred by the doctrine of res judicata.

Even had plaintiff not already had an opportunity to litigate his claims, defendant is correct that plaintiff's claim must be dismissed on jurisdictional grounds. In order to more fully explain to plaintiff the grounds for dismissal of his claims, and with hope that plaintiff will not return to this court with the same claims, the court briefly will address the substance of the issues he raises.

 The Court of Federal Claims does not have jurisdiction to review the decisions of the District Courts in cases over which the District Courts have jurisdiction. *See Joshua v. United States,* 17 F.3d 378, 380 (Fed. Cir.1994). Moreover, the Court of Federal Claims has no jurisdiction to hear criminal cases. *Sanders v. United States,* 252 F.3d 1329, 1333–34 (Fed.Cir.2001) (citing *Kania v. United States,* 227 Ct.Cl. 458, 466–7, 650 F.2d 264 (1981)). "The court has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code and the due process and equal protection clauses of the Fifth Amendment do not provide for the payment of monies, even if there were a violation." *Joshua v. United States,* 17 F.3d at 379. *Cf., Allustiarte v. United States,* 256 F.3d 1349 (Fed.Cir.2001) (holding that Court of Federal Claims judges do not have the jurisdiction to review decisions of federal bankruptcy courts), *cert. denied,* — U.S. ——, 122 S.Ct. 619, 151 L.Ed.2d 541 (2001).

With the exception of his tort claims, plaintiff's requests for relief in this court are requests for review of a final decision entered by a federal district court in a criminal matter. First, plaintiff requests reversal of his conviction based on allegations that the District Court exercised jurisdiction over his plea agreement in violation of the Tucker Act. Second, plaintiff requests reversal of his conviction based on allegations that the DEA (and local law enforcement agents), operating under the authority of defective warrants, subjected plaintiff to an illegal search and seizure and violated his due process rights. Specifically, plaintiff alleges that the DEA improperly, during the night, exercised a warrant authorizing the search of his property, thereby violating Federal Rule of Criminal Procedure 41(c)(1).[5] Plaintiff further alleges that he was arrested improperly because no arrest warrant was issued prior to his arrest and the search warrant exercised by the DEA was not issued pursuant to an appropriate grand jury indictment. In addition, plaintiff claims that local law enforcement agents searched his house on the morning of January 20, 1995 without a warrant and before attempting to secure his consent. Finally, plaintiff requests reversal of his conviction based on allegations that the Federal District Court, a DEA agent and the United States Attorney's Office conspired to fraudulently create and backdate an arrest warrant and indictment and to enter the documents into the court record.

In sum, plaintiff requests that this court review the actions of the District Court for the Middle District of Louisiana and government officials in criminal proceedings. To the extent that plaintiff requests reversal or review of his criminal conviction, he should seek relief in either the District Court for the Middle District of Louisiana or the United States Court of Appeals for the Fifth Circuit. *See Sanders v. United States,* 252 F.3d at 1336 ("[C]laims for breach of plea agreements and other agreements unique to the criminal justice system should be brought in the courts in which they were negotiated and executed.") (citing *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). In this case, plaintiff already appears to have appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed his conviction and remanded to the District Court regarding plaintiff's ability to pay the $100,000.00 fine imposed.[6]

In addition to plaintiff's request for reversal of his criminal conviction, plaintiff makes

---

5. Plaintiff likely meant to cite Federal Rule of Criminal Procedure 42(c)(2), which provides, in relevant part, that "[t]he warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." Plaintiff asserts that reasonable cause was not established to authorize a search conducted at night.

6. *See supra* note 4.

a claim requesting that the court return his forfeited property and award him money damages independent of a judgment overturning his criminal conviction. Plaintiff alleges that the seizure of his property by DEA agents and subsequent forfeiture order entered by the District Court, in excess of $10,000.00, constituted a taking for which he was not compensated in violation of the Fifth Amendment and for which the Tucker Act grants jurisdiction in this court.

The Tucker Act grants the United States Court of Federal Claims jurisdiction to entertain claims alleging that the government has taken private property for public use in violation of the Fifth Amendment to the United States Constitution. The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [Court of Federal Claims] to hear and determine." *Preseault v. ICC*, 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (quoting *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)); *accord Narramore v. United States*, 960 F.2d 1048, 1052 (Fed.Cir.1992); *Perry v. United States*, 28 Fed.Cl. 82, 84 (1993).

Plaintiff has requested money damages for property ordered forfeited by the District Court. His misclassification of his criminal asset forfeiture as a compensable taking does not give rise to Court of Federal Claims jurisdiction. The courts distinguish between property taken for public use under the government's eminent domain powers, which is civil in nature, and the forfeiture of property under the government's police power, which is criminal in nature. *See Crocker v. United States*, 37 Fed.Cl. 191, 194, *aff'd*, 125 F.3d 1475 (Fed.Cir.1997). In *United States v. United States Coin & Currency*, the Supreme Court held:

"[P]roceedings instituted for the purpose of declaring the forfeiture of a man's property *by reason of offences committed by him*, though they may be civil in form, are in their nature criminal" for Fifth Amendment purposes. (Emphasis supplied.) From the relevant constitutional standpoint there is no difference between a man who "forfeits" $8,674 because he has used

the money in illegal gambling activities and a man who pays a "criminal fine" of $8,674 as a result of the same course of conduct. In both instances, money liability is predicated upon a finding of the owner's wrongful conduct[.]

401 U.S. 715, 719, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (quoting *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

In 1970, Congress passed the Comprehensive Drug Abuse Prevention and Control Act, requiring that real property acquired through the participation in a "continuing criminal enterprise" shall be forfeited as a penalty to the United States. Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 408, 1970 U.S.C.C.A.N. (84 Stat. 1236) 4618. In 1984, Congress amended the statute in the Comprehensive Forfeiture Act of 1984, Pub.L. No. 98–473, §§ 301–309, 98 Stat. 1837, 2040–57 (1984), which extended forfeiture under 21 U.S.C. § 853 to all defendants convicted of federal drug felonies. *See United States v. Nichols*, 841 F.2d 1485, 1488 (10th Cir.1988) (citing 21 U.S.C. 853(a)). Congress has clearly expressed that the purpose of the forfeiture requirement is to deter illegal sale of narcotics by making the potential liabilities of entering a "continuing criminal enterprise" prohibitively expensive. *See* H.R.Rep. No. 91–1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4575. In *Libretti v. United States*, the United States Supreme Court explained:

Forfeiture is an element of the sentence imposed *following* conviction or, as here, a plea of guilty .... The text of the relevant statutory provisions makes clear that Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes. A person convicted of engaging in a continuing criminal enterprise "shall be *sentenced* ... to the forfeiture prescribed in section 853." 21 U.S.C. § 848(a) (emphasis added). Forfeiture is imposed "in addition to any other sentence." 21 U.S.C. § 853(a) (emphasis added).... The legislative history of the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, Tit. II, 98 Stat. 1976, also

characterizes criminal forfeiture as punishment. See, e.g., S.Rep. No. 98–225, p. 193 (1983) (criminal forfeiture "is imposed as a sanction against the defendant upon his conviction"). Congress plainly intended forfeiture of assets to operate as punishment for criminal conduct in violation of the federal drug and racketeering laws, not as a separate substantive offense.

Our precedents have likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense. In *Alexander v. United States*, 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), we observed that the criminal forfeiture authorized by the RICO forfeiture statute "is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine.'" *Id.*, at 558, 113 S.Ct. 2766. Similarly, [the Court recognized] in *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), ... that a "criminal proceeding ... may often include forfeiture as part of the sentence." *Id.*, at 567, 103 S.Ct. 2005. *Libretti v. United States*, 516 U.S. 29, 38–40, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995); *see also United States v. Nichols*, 841 F.2d at 1487 (1988).

In the case at bar, according to the forfeiture order signed by the District Court on November 16, 1995, Mr. Maracalin's assets were forfeited pursuant to 21 U.S.C. §§ 846, 841(a)(1) and 853. Section 853 reads:

§ 853. Criminal forfeitures

(a) Property subject to criminal forfeiture Any person convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

21 U.S.C. § 853 (1994).

■ The unambiguous language of the statute makes it clear that plaintiff's property was forfeited pursuant to a criminal statute. As discussed above, this court does not have criminal jurisdiction. This court, therefore, has no jurisdiction over actions contesting criminal forfeiture procedures. *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1374–75 (Fed.Cir.2001) (stating that the Court of Federal Claims does not have jurisdiction over Vereda's takings claim requiring a determination of the correctness of the administrative forfeiture.); *Crocker v. United States*, 125 F.3d at 1477 (noting that the Court of Federal Claims does not have jurisdiction "over a forfeiture of seized property or money under the Controlled Substances Act."). For the foregoing reasons, the court holds that the forfeiture of plaintiff's assets pursuant to 21 U.S.C. § 853 does not give rise to a compensable takings claim under the Fifth Amendment to the Constitution.

■ Mr. Maracalin also requests damages for alleged intentional torts allegedly perpetrated upon him by federal and local law enforcement agents.[7] Although raised in plaintiff's complaint, Judge Bruggink's complete dismissal of plaintiff's prior action, Case No. 00–715C, did not specifically address plaintiff's tort allegations. The defendant alleges that these causes of action are over six years old and, therefore, are barred by the statute of limitations. A statute of limitations analysis is unnecessary, however, because the threshold issue that plaintiff cannot overcome is one of jurisdiction. The Tucker Act expressly excludes tort claims from the

---

7. Mr. Maracalin also alleges, albeit without basis, that he is entitled to damages for his mother and children for depriving them of his presence.

jurisdiction of the United States Court of Federal Claims. 28 U.S.C. § 1491(a)(1) (1994); *accord Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Alves v. United States,* 133 F.3d 1454, 1459 (Fed.Cir.1998); *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.), *reh'g denied,* (1997); *Golden Pac. Bancorp v. United States,* 15 F.3d 1066, 1070 n. 8 (Fed. Cir.), *reh'g denied, cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *D.F.K. Enters., Inc. v. United States,* 45 Fed.Cl. 280, 284 (1999). In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated:

It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims. The Tucker Act expressly provides that the "United States Court of Federal Claims shall have jurisdiction ... in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1988) (emphasis added), as amended by Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506; *see Aetna Casualty and Surety Co. v. United States,* 655 F.2d 1047, 1059, 228 Ct.Cl. 146 (1981).

*Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993). Any claim the plaintiff might assert for tort relief, therefore, cannot be entertained in this court.

■ As a final note, plaintiff requests money damages for breaches of his Fourth Amendment search and seizure and Fifth Amendment due process rights. The court has no jurisdiction, however, to award damages for search and seizure and due process violations because, "except for the taking clause of the fifth amendment, the other amendments [to the Constitution] do not require the United States to pay money for their alleged violation." *Elkins v. United States,* 229 Ct.Cl. 607, 608, 1981 WL 22073 (1981); *see also Crocker v. United States,* 125 F.3d at 1476.

■ In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994). The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, or statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2279 n. 10, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; " 'it does not create any substantive right enforceable against the United States for money damages.' " *United*

States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g* and *reh'g en banc denied* (2001); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir. 2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied, en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009. Because the search and seizure and due process clauses of the Fourth and Fifth Amendments do not mandate money damages, this court does not have jurisdiction to entertain plaintiff's Fourth and Fifth Amendment claims for lack of subject matter jurisdiction.

## CONCLUSION

The court finds that the plaintiff has failed to establish the court's subject matter juris-diction over the claims raised or to state a claim upon which relief can be granted. For the reasons discussed above, the court, hereby, GRANTS defendant's motion to dismiss the complaint. The Office of the Clerk shall enter judgment consistent with this opinion. Because Case No. 01–375C was filed by the same party, was based on the same transactional facts and raised the same issues as those presented in Case No. 00–715C, also filed in this court and previously dismissed by Judge Bruggink, the Office of the Clerk is directed to notify a judge assigned to a future case filed by this plaintiff of his prior litigation history so that future cases based on the same transactional facts and raising the same issues as are raised in the case currently before the court can be rapidly disposed of by the court.

**IT IS SO ORDERED.**