**James H. SANDERS, Petitioner,**

v.

**UNITED STATES, Respondent.**

No. 01–5035.

United States Court of Appeals, Federal Circuit.

June 12, 2001.

James H. Sanders, of Portland, Oregon, pro se.

Allison A. Page, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Harold D. Lester, Jr., Assistant Director.

Before MICHEL, SCHALL, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case presents the question of whether the United States government's alleged breach of an agreement with a criminal defendant concerning his release on bail after trial gives rise to a claim for money damages cognizable in the Court of Federal Claims. We hold that such a claim is cognizable only if the agreement clearly and unmistakably subjects the United States to monetary liability for any breach. The agreement here a court-approved stipulation that released the defendant on bail pending sentencing and appeal of his criminal conviction did not clearly and unmistakably signal the government's intent to be subject to such monetary liability. We accordingly affirm the decision of the Court of Federal Claims dismissing the complaint *sua sponte* for lack of subject matter jurisdiction. *Sanders v. United States*, No. 00–528C (Fed.Cl. Oct. 10, 2000).

**BACKGROUND**

This case arises from the conviction (following a jury trial) of Mr. James H. Sanders ("petitioner") in the United States District Court for the Eastern District of California on several counts of mail fraud, in violation of 18 U.S.C. § 1341. The record does not disclose the date of petitioner's conviction. There were post-trial proceedings in the district court, including the imposition of a 51 month sentence, after which petitioner appealed to the United States Court of Appeals for the Ninth Circuit.

Following petitioner's conviction, counsel for petitioner and Assistant United States Attorney ("AUSA") Daniel Linhardt, on or about May 30, 1996, entered into a stipulated agreement regarding petitioner's post-trial bail status. That agreement, titled "STIPULATION & ORDER RE: RELEASE," provided, in pertinent part, that "Mr. Sanders may continue on release pending further post trial proceedings in this court subject to the same conditions as heretofore and to the following additional special conditions...." [1] The "additional

---

**1.** The full text of the agreement was as follows:

IT IS HEREBY STIPULATED by and between Daniel S. Linhardt, Assistant United States Attorney, counsel for plaintiff, and Jeffrey L. Staniels, Chief Assistant Federal Defender, counsel for James H. Sanders, as follows:

1. That Mr. Sanders' eligibility for release pending sentencing and appeal is not restricted by the provisions of 18 U.S.C. §§ 3143(a)(2) or (b)(2);

2. That Mr. Sanders does not pose a risk of flight nor (so long as he complies with the conditions hereafter set forth) a "danger to the community" within the meaning of that term in the Bail Reform Act;

3. That Mr. Sanders may continue on release pending further post trial proceedings in this court subject to the same conditions as heretofore and to the following additional special conditions:

   a. Mr. Sanders, acting as Chief Executive Officer of Shippers Dispatch Associa-

tion, will notify all of the agents currently enrolled and participating in that broker's agency program that all "In house Motor Carrier" lease activity shall be discontinued pursuant to the notice provisions stipulated in any pertinent agreements which shall apply, said notice to be prepared and posted by certified mail not later than June 1, 1996, and said discontinuation of lease activity to be effective not later than July 6, 1996.

   b. Mr. Sanders, acting as Chief [E]xecutive Officer for the administrative contractor for Specialty Freight, Inc., also known as Specialty Freight by Frye, Inc., will cause an officer or attorney-in-fact for that I.C.C. permitted motor carrier to cancel all existing insurance coverage and related filings presently in force, effective not later than July 6, 1996.

   c. That Mr. Sanders will cause copies of the communications referred to in paragraphs 3.a and 3.b, above, as well as any

special conditions" set forth in the stipulation apparently related to the charges of mail fraud brought against petitioner. Those conditions: (1) required petitioner, in his capacity as the Chief Executive Officer of Shippers Dispatch Association, to "notify all of the agents currently enrolled and participating in that [Association's] agency program that all 'In house Motor Carrier' lease activity shall be discontinued;" (2) required petitioner, in his capacity as the Chief Executive Officer for the administrative contractor for Specialty Freight, Inc., to "cancel all existing insurance coverage and filings presently in force;" and (3) required petitioner to provide the United States Attorney's Office with "copies of the communications" relating to the cancellation of the lease activities and insurance contracts. The government does not dispute that Mr. Sanders fulfilled these requirements under the agreement. The stipulated agreement was entered as an order by United States District Court Judge Lawrence K. Karlton on June 3, 1996.

During the pendency of Mr. Sanders' appeal of his conviction, the district court held a bail revocation hearing on March 30, 1999. At that hearing, the court revoked Mr. Sanders' bail and ordered him into custody "partly because of [the court's] belief that the delay in Sanders' appeal was due to Sanders intentionally clogging the Ninth Circuit's docket. . . ."

*Sanders v. United States,* No. CV–99–1314–ST, 2000 U.S. Dist. LEXIS 9329, at *5 (D.Or. May 18, 2000) (unpublished disposition). Three days later, on April 2, 1999, the district court held another hearing at which Mr. Sanders was released "on his own recognizance because [the court] determined that the delay with Sanders' appeal was due in large part to the Ninth Circuit." *Id.* Petitioner alleges that AUSA Linhardt objected at both hearings to petitioner's continued release on bail (apparently due at least in part to petitioner's alleged practice of law without a license in Oregon), and it is those objections that form the basis for this appeal. On June 22, 1999, the Ninth Circuit affirmed Mr. Sanders' sentence and his underlying conviction, and his release on bail pending that appeal was accordingly revoked. *United States v. Sanders,* No. 97–10056, 1999 WL 439415, 1999 U.S.App. LEXIS 14076 (9th Cir. June 22, 1999) (unpublished disposition).

Mr. Sanders subsequently brought a *pro se* breach of contract action in the United States District Court for the District of Oregon against the United States and AUSA Linhardt. In his complaint, petitioner alleged, *inter alia,* that AUSA Linhardt's alleged objections at the revocation hearings to petitioner's continued release on bail breached the stipulation agree-

---

further communications which he makes pertaining to in-house motor carrier activity *to be provided to the office of the United States Attorney for the Eastern [D]istrict of California.*

d. In consideration of the cancellation of existing insurance referred to in paragraph 3.b, Mr. Linhardt agrees to communicate, upon request, with insurance companies and underwriting reporting services which might become involved with applications for replacement insurance by Specialty Freight, its officers, directors or principal, concerning the actual circumstances of

this case and this agreement and to recommend that such applications and persons not be treated adversely based on its or their former association with Mr. Sanders' agency program.

4. Nothing in this agreement shall be construed as an admission of guilt or of impropriety regarding regulatory procedures by Shippers Dispatch Association, itself, nor of any incorporated "in house" motor carrier; nor shall this agreement be construed to restrict Shippers Dispatch Association's other activities conducted pursuant to its broker's license.

ment, and sought at least $18 million in unspecified damages.

The government subsequently moved to dismiss or, in the alternative, for summary judgment. On May 18, 2000, a magistrate judge recommended that the case be transferred to the Court of Federal Claims. *Sanders v. United States*, No. CV–99–1314 ST, 2000 U.S. Dist. LEXIS 9329, at *17 (D.Or. May 18, 2000) (unpublished disposition). On June 21, 2000, the district court adopted the magistrate judge's recommendation and transferred the case to the Court of Federal Claims. *Sanders v. United States*, No. CV–99–1314–ST, 2000 U.S. Dist. LEXIS 9326 (D. Or. June 21, 2000) (unpublished disposition).

Following the transfer, Mr. Sanders amended his complaint, *inter alia*, to seek "not less than Twenty–Four Million Dollars ($24,000,000) nor greater than Two Hundred and Eighty Million Dollars ($280,000,000) in compensatory damages" for the alleged breach of the stipulated agreement.

On October 10, 2000, the Court of Federal Claims concluded that the Tucker Act, 28 U.S.C. § 1491(a)(1), did not provide jurisdiction over petitioner's complaint, and accordingly dismissed the amended complaint *sua sponte* for lack of subject matter jurisdiction. *Sanders v. United States*, No. 00–528C (Fed.Cl. Oct. 10, 2000). In reaching that conclusion, the court reasoned, in pertinent part, that "[a] stipulated judicial sentencing release order in a criminal case is not an express or implied proprietary contract with the United States for a sum certain which invokes the Court's Tucker Act jurisdiction; it is more in the nature of a criminal plea or cooperation agreement." *Id.*, slip op. at 2. The court further noted that any remedies for the alleged breach may accordingly be sought only in United States district courts:

Simply put, this suit rests on the [petitioner's] false assumption that a criminal sentencing release order can transcend the criminal justice arena and create independent rights in a civil context. Since this agreement, however, is clearly the creation of the criminal justice system, it follows that the remedies, if any, for the alleged breach of this must be found within that system. [Petitioner's] release agreement, standing alone, does not provide him with any independent substantive rights enforceable against the United States for money damages.

*Id.*, slip op. at 2–3 (internal citations omitted).

The court also dismissed petitioner's claims against AUSA Linhardt, noting that "this Court does not have jurisdiction to hear allegations against private parties. The Court's jurisdiction extends only to suits against the United States." *Id.*, slip op. at 3. This timely *pro se* appeal followed.

### DISCUSSION

#### I

A decision of the Court of Federal Claims "to dismiss a complaint for lack of jurisdiction is a question of law subject to ... independent review by this court." *Shearin v. United States*, 992 F.2d 1195, 1195 (Fed.Cir.1993). The petitioner (Mr. Sanders) bears the burden of proving that the Court of Federal Claims possessed jurisdiction over his complaint. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir.1991). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

#### II

On this appeal, Mr. Sanders does not challenge the Court of Federal Claims' dismissal of AUSA Linhardt as an improperly named defendant. He urges, however, that he has properly stated a claim for

money damages against the United States that is cognizable under the Tucker Act, 28 U.S.C. § 1491(a)(1).

■■ The Tucker Act gives the Court of Federal Claims jurisdiction over:

[A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1994). That statute constitutes a waiver of sovereign immunity as to those claims. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). It is well settled that the Court of Federal Claims' jurisdiction under the Tucker Act to hear and decide contract claims against the United States "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996).

The court-approved stipulated order here may be fairly characterized as an "express or implied in fact" contract. *Hercules,* 516 U.S. at 423–24, 116 S.Ct. 981. However, we nonetheless conclude that petitioner may not maintain a claim for money damages for the alleged breach of that agreement.

■ We have no doubt that federal and state prosecutors are authorized to enter into plea agreements and pre-trial and post-trial release agreements with criminal defendants and that such agreements are specifically enforceable. In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), for example, the Supreme Court held that the government's breach of a plea agreement gives rise to a claim for specific performance of that agreement, or, in the alternative, entitles the criminal defendant to withdraw his guilty plea. *Id.* at 263, 92 S.Ct. 495. In reaching this conclusion, the Court reasoned, in pertinent part, that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. 495. *See also Town of Newton v. Rumery,* 480 U.S. 386, 398, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (holding that courts may specifically enforce "release-dismissal" agreements *i.e.,* agreements to dismiss criminal charges in exchange for a defendant's waiver of the right to sue local governments and officials under 42 U.S.C. § 1983 for constitutional violations arising out of arrest and prosecution).

■■ It is no doubt also true that in the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement. Indeed, as a plurality of the Supreme Court noted in *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), "damages are always the default remedy for breach of contract." *Id.* at 885, 116 S.Ct. 2432 (plurality opinion) (citing, *e.g., Restatement (Second) of Contracts* § 346, cmt. a (1981)). Although agreements that are in part civil and in part criminal may be governed by the presumption concerning the availability of damages in civil cases,[2] a different rule obtains where the agreement is entirely concerned with the conduct of the parties in a criminal case. A decision of one of our predecessor courts, the Court of Claims, has previously established that in those circumstances a damages remedy is not ordinarily available. In *Kania v.*

---

2. *See Town of Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987).

*United States,* 227 Ct.Cl. 458, 650 F.2d 264 (Ct.Cl.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981), a federal grand jury witness brought a Tucker Act claim against the United States for the alleged breach of an immunity agreement. The Court of Claims held that it lacked jurisdiction to adjudicate the claim, noting that "[t]he contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds." *Id.* at 268. That court did recognize that breach of such an agreement under some circumstances could support a damages claim under the Tucker Act:

> [I]t [is] possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness. *But, in such case, the court would look for specific authority in the [Assistant U.S. Attorney] to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined.*

*Id.* at 268 (emphasis added). In other words, a claim for money damages for the alleged breach of such an agreement may not be maintained unless that agreement clearly and unmistakably subjects the government to monetary liability for any breach.

Other courts that have considered this issue have likewise concluded that alleged breaches of plea agreements and other agreements arising out of the criminal justice system do not ordinarily give rise to claims for money damages. In *1–95–CV–553–P1 v. 1–95–CV–553–D1,* 75 F.3d 135 (2d Cir.1996), for example, the Second Circuit noted that "the only remedies available for breach of a plea agreement are enforcement of the agreement or affording the defendant an opportunity to withdraw the plea," *id.* at 136, and accordingly held in pertinent part that "[t]he District Court correctly ruled that no damages remedy was available for the admitted breach of the plea agreement in this case." *Id.* at 136–37. *See also Sadeghi v. United States,* 46 Fed. Cl. 660, 662 (2000) ("Because administering the criminal justice system is an activity that lies at the heart of sovereign action, breach of contract arising out of the criminal justice system does not ordinarily give rise to an action under the Tucker Act for damages.") (citing *Drakes v. United States,* 28 Fed. Cl. 190, 193 (1993)).[3]

There are important policy considerations that support this rule. United States district courts and corresponding state courts, for example, are assigned the primary role in overseeing and enforcing agreements that arise out of and implicate the criminal justice system. As the Court of Claims noted in *Kania,* "the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not" to that court. *Kania,* 650 F.2d at 268. Under such circumstances, "[i]t is particularly unreasonable

---

**3.** In *Johnson v. Sawyer,* 980 F.2d 1490 (5th Cir.1992), *amended on other grounds,* 4 F.3d 369 (5th Cir.1993), the Fifth Circuit went so far as to conclude that "[i]rrespective of its label, a plea agreement in a criminal case is not a contract in the civil sense. . . . *[T]he breach of a plea agreement never generates civil remedies such as monetary damages or specific performance."* 980 F.2d at 1501 (emphasis added). The Fifth Circuit's conclusion regarding the unavailability of the remedy of specific performance for breach of a plea agreement is clearly incorrect in light of *Santobello,* in which the Supreme Court explicitly held that breach of a plea agreement gives rise to a cognizable claim for "specific performance of the agreement. . . ." *Santobello,* 404 U.S. at 263, 92 S.Ct. 495.

to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials." *Id.* at 269. That logic applies with equal force to the negotiation and execution of stipulated bail agreements such as the one at issue. Moreover, the Supreme Court has made clear that claims for breach of plea agreements and other agreements unique to the criminal justice system should be brought in the courts in which they were negotiated and executed. *See, e.g., Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide" on the appropriate relief); *see also United States v. Bradstreet,* 207 F.3d 76, 80 (1st Cir.2000) ("[C]hoosing the appropriate remedy for nonperformance [of a sentencing agreement] rests in the discretion of the trial courts"); *United States v. Hawley,* 93 F.3d 682, 694 (10th Cir.1996) (noting that giving the district court latitude regarding the appropriate remedy for breach of plea agreement "is preferable in light of the district court's position with respect to the case").

In accordance with *Kania,* we do not suggest that an agreement reached in a criminal case could not, theoretically, provide for monetary liability for breach, assuming that the prosecutors had authority to enter into such an agreement. *Kania,* 650 F.2d at 268. But such liability should not be implied, and could exist only if there was an unmistakable promise to subject the United States to monetary liability. This would require the same kind of express language (in both written and oral agreements) required by the unmistakability doctrine concerning government liability for the exercise of sovereign power. *See Winstar Corp.,* 518 U.S. at 878–80, 116 S.Ct. 2432 (plurality opinion). No such language appears in this agreement,

and the Court of Federal Claims properly dismissed this action for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Federal Claims is affirmed.

*AFFIRMED.*

### COSTS

No costs.