TARANTO, Circuit Judge,
dissenting.
I do not see a sufficient justification for excepting the confidentiality promise in the mediation agreement at issue from the strong general rule that contracts implicitly carry a damages remedy for their breach. In my view, the default damages remedy is available to Mr. Higbie if he proves entitlement to it, and the Court of Federal Claims therefore has jurisdiction under the Tucker Act. I would reverse the jurisdictional dismissal and remand for the parties to address the merits. Accordingly, I dissent from the affirmance of the Court of Federal Claims’ judgment dismissing Mr. Higbie’s case for lack of jurisdiction.
A
This court’s decision in Holmes v. United States, 657 F.3d 1303 (Fed.Cir.2011), *996 rested on its recognition of a principle long understood in contract law: “damages are always the default remedy for breach of contract.” United States v. Winstar Corp., 518 U.S. 839, 885, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (plurality opinion) (citing Restatement (Second) of Contracts § 346, cmt. a (1981); 3 E. Farnsworth, Contracts § 12.8, p. 185 (1990)), cited in Holmes, 657 F.3d at 1314. That principle broadly applies to establish Tucker Act jurisdiction in contract disputes, even though contracts themselves often do not provide for damages relief: the default remedy from background law suffices. As Holmes stated, “[n]ormally[,] contracts do not contain provisions specifying the basis for the award of damages in case of breach.... [I]n a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary.” 657 F.3d at 1314 (internal quotation marks and citation omitted).
There is good reason to follow, rather than depart from, that well-established and broadly applicable default rule here. For one thing, strong adherence to background rules is especially important with contracts. In contract interpretation, “a court properly takes account of background legal rules — the doctrines that typically or traditionally have governed a given situation when no agreement states otherwise. Indeed, ignoring those rules is likely to frustrate the parties’ intent and produce perverse consequences.” US Airways, Inc. v. McCutchen, 569 U.S. -, 133 S.Ct. 1537, 1549, 185 L.Ed.2d 654 (2013) (citations omitted).
More specifically, money damages are available as a remedy for breach of confidentiality provisions of contracts in a variety of contexts. See, e.g., Youtie v. Macy’s Retail Holding, Inc., 626 F.Supp.2d 511, 523-27 (E.D.Pa.2009) (holding that money damages were available for a breach of contract claim for violation of a confidentiality provision of an employment contract); Davidson v. Cao, 211 F.Supp.2d 264, 280-84 (D.Mass.2002) (denying a motion to dismiss a breach of contract claim for money damages for violation of a confidential disclosure agreement); Doe v. Portland Health Centers, Inc., 99 Or.App. 423, 782 P.2d 446, 448-49 (1989) (denying a motion to dismiss a breach of contract claim for money damages for violation of a “patient confidentiality statement,” stating that “we do not agree that ... damages [other than those for emotional suffering] are unavailable as a matter of law”). Doubtless there are complexities, but there appears to be nothing out of the ordinary or unexpected about the availability of monetary relief, where harm and damages are proved, for breach of confidentiality promises.
The limited case law on confidentiality commitments in mediation agreements seems to be in accord. E.g., Bethlehem Area Sch. Dist. v. Zhou, No. 09-03493, 2012 WL 930998, at *1 (E.D.Pa. Mar. 20, 2012) (“This matter presently involves a contract provision that proceedings before a mediator be kept confidential. I conclude that the contract was breached, claimant Diana Zhou’s motion for summary judgment must be granted, she is entitled to nominal damages of $1, and at trial she may present evidence of actual damages.”); Bashaw v. Johnson, No. 11-2693-JWL, 2012 WL 1623483, at *3-4 (D.Kan. May 9, 2012) (“According to defendant, plaintiffs, after the mediation failed, violated the confidentiality agreement.... [Defendant] certainly [has] a plausible claim for damages stemming from the alleged breach.”). The government has not identified any on-point contrary authority.
*997 B
The default rule is not absolute, but I do not see a basis for an exception in this ease.
1. As Holmes noted, one exception applies when “[a] contract expressly disavow[s] money damages.” Holmes, 657 F.3d at 1314. But there is no such express disavowal in the agreement at issue here. Nor is there a sound basis for finding an implicit disavowal.
The confidentiality provision declares that “[mjediation is a confidential process” and that “statements made during the mediation are for settlement purposes only.” J.A. 127 (underlining deleted). The government and the majority view this as providing affirmatively for the “remedy” of exclusion from evidence. Even if that characterization is accepted, however, the provision cannot reasonably be taken to eliminate the default monetary remedy. The specification of the evidentiary “remedy” has a ready explanation that in no way implies ouster of the monetary remedy. After all, one familiar background principle is that the availability of monetary damages, where such damages are adequate, renders ^available equitable relief, such as specific performance of the confidentiality/settlement-use-only promise.[1] With that preference for legal remedies in the background, it makes perfect sense for a contract to provide expressly for a non-monetary remedy to ensure its availability, without any implication that the new remedy is to be exclusive. The natural inference is that this kind of specified remedy supplements but does not supplant the default damages remedy. A fortiori for a provision that is not even worded as a “remedy” provision.
If the new remedy, or other aspects of the contractual context, were somehow inconsistent with preserving the background rule, an implication of override might be warranted. Cf. United States v. Fausto, 484 U.S. 439, 452, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (background presumption that Congress intends judicial review of agency action to be available is displaced when that presumption is contrary to a specific statutory scheme at issue). But there has been no such showing here. As indicated by the authorities allowing damages for mediation-confidentiality breach, and the absence of contrary authorities, the availability of a remedy of money damages — which must be proven, of course — appears to be consistent with the mediation context and the specific remedy of evidentiary exclusion. The government has not explained why there is any inconsistency.
Moreover, the government has not shown — it has not even meaningfully contended — that evidentiary exclusion will always, or even regularly, suffice to cure all normally compensable injuries from breach of confidentiality. It is easy to imagine reputational harms and even job- *998 related harms, as well as increased costs of resolving the dispute that gave rise to the mediation. As to the latter, for example, Mr. Higbie might incur delay and expense from additional proceedings in the resolution of his discrimination claim because the EEO investigator, at an early stage, might have been influenced by knowledge of Mr. Higbie’s alleged stonewalling in the mediation. Sometimes, perhaps often, there will be no such harms. In that case, there should be no damages. But that is a merits judgment, not one about the general unavailability of monetary relief even for proven harm from breach of this kind of contract.
2. This court has recognized an exception to Tucker Act jurisdiction for a contract claim based on “[a]n agreement ‘entirely concerned with the conduct of parties in a criminal case.’ ” Holmes, 657 F.3d at 1314 (quoting Sanders v. United States, 252 F.3d 1329, 1334 (Fed.Cir.2001)); see Kania v. United States, 650 F.2d 264, 268-69 (Ct.Cl.1981). But that exception is not directly applicable to Mr. Higbie’s case, which has nothing to do with criminal law. And the expressed rationales for the exception do not justify creating a new exception applicable here.
The criminal-case exception traces back to Kania. There, the Court of Claims considered whether an agreement not to prosecute made between an Assistant United States Attorney and a plaintiff was money-mandating. Kania, 650 F.2d at 266-68. The court held that it was not. Id. at 267. The court’s rationale was that the agreement did not evidence that the AUSA had authority to obligate payment by the government in the event of breach. Id. at 268. The court thought a demonstration of authority was essential in the criminal context because criminal cases were themselves outside the purview of the Court of Claims. Id. at 268-69.
In Sanders, this court stressed the narrowness of the criminal exception articulated in Kania, explaining that the Kania exception disrupts the normal presumption of money damages for breach of contract only “where the agreement is entirely concerned with the conduct of parties in a criminal case.” Sanders, 252 F.3d at 1334; see id. at 1336. This court held that such an agreement could “theoretically, provide for monetary liability for breach.... But such liability should not be implied, and could exist only if there was an unmistakable promise to subject the United States to monetary liability.” Id. at 1336. Sanders rested this distinctive presumption for the purely criminal context on Kama’s concern about the jurisdictional divide in criminal cases, noting that “the Supreme Court has made clear that claims for breach of plea agreements and other agreements unique to the criminal justice system should be brought in the courts in which they were negotiated and executed.” Id. at 1336. Importantly, Sanders retained the normal presumption of money damages for breach with regard to the vast majority of contracts, including those that intersect with criminal law but have some civil component. Id. at 1334.
In light of these precedents, the criminal exception has no bearing here. Mr. Hig-bie’s mediation agreement falls entirely outside of criminal law. And because mediation is not a legal setting foreign to this court’s docket, Mr. Higbie’s contract does not give rise to the jurisdictional concern animating Kania and Sanders.[2]
*999 3. Outside the disavowal and criminal-case settings, it appears that only once, in Rick’s Mushroom Service, Inc. v. United States, 521 F.3d 1338 (Fed.Cir.2008), has this court held a contract not to carry the default monetary remedy. But, as Holmes indicated, Rick’s involved a “unique cost-share agreement,” Holmes, 657 F.3d at 1315, and a broader rationale is not apparent. See Rick’s, 521 F.3d- at 1343. There is no reason to draw from Rick’s a lesson applicable to bar Mr. Higbie’s claim at the jurisdictional threshold.
Rick’s involved an agreement between the government and a waste facility: the government was to provide specifications detailing how the facility could be constructed and operated in a conservation-friendly manner; the facility — if it complied — was to be entitled to payments to help defray the facility’s costs. Id. at 1341, 1344. Under the agreement, the government provided specifications and paid the facility for following them. Nevertheless, the facility was sued by a third party for allegedly violating state and federal environmental laws, and the facility eventually settled. Id. at 1341-42. When the facility asked the government for indemnification, the government refused, and the facility then sued the government in the Court of Federal Claims. Id. at 1342. This court affirmed the jurisdictional dismissal of the suit.
The parties, notably, did not contend that the contract itself was a source of substantive law that created a right to money damages. See generally Brief for Plaintiff-Appellant, Rick’s, 521 F.3d 1338 (No. 07-5137), 2007 WL 2734363; Brief for Defendant-Appellee, Rick’s, 521 F.3d 1338 (No. 07-5137), 2007 WL 3264969; Reply Brief for Plaintiff-Appellant, Rick’s, 521 F.3d 1338 (No. 07-5137), 2007 WL 4739079. As this court noted, “[the faeility] d[id] not point to a money-mandating source of law to establish jurisdiction under -28 U.S.C. § 1491(a)(1) for its breach of contract claim. Instead, [the facility] attempted] to rely on the [Contract Disputes Act] as the source of its substantive right to recover money damages and to establish jurisdiction under 28 U.S.C. § 1491(a)(2).” Rick’s, 521 F.3d at 1343.
The absence of a straight contract-based contention fits with a rationale this court expressed in discussing one of the claims that the facility actually made; namely, the absence of authority to obligate funds in the government official that signed the agreement. The Anti-Deficiency Act prohibits procurement agencies and employees from “entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation.” Hercules Inc. v. United States, 516 U.S. 417, 427, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (citing 31 U.S.C. § 1341). In rejecting the facility’s related claim for equitable indemnification, the court stated that “the contracting officer would have no authority under the ADA to enter into an indemnity agreement without an appropriation.” Rick’s, 521 F.3d at 1346. The government has not advanced such a rationale as a basis for the jurisdictional dismissal here. See supra note 2.
Perhaps a full understanding of the context in Rick’s would make clear the inconsistency of any monetary remedy with the statutory and regulatory regime under which the cost-sharing agreement was made in that case. But whatever the reach of Rick’s, I see no reason for extending its result to this case.
C
It may well be that Mr. Higbie cannot succeed on his damages claim for breach of *1000 contract, or even that his current pleading is deficient. See, e.g., Sarsfield v. Cnty. of San Benito, No. 07-cv-02528 JF, 2010 WL 1929619, at *8-9 (N.D.Cal. May 12, 2010) (holding that “[p]laintiff fail[ed] to plead, let alone show evidence of, cognizable damages he suffered as a result” of an alleged breach of the confidentiality provision of a mediation agreement). But that possibility — mentioned without suggestion as to its substantiality — goes to the merits of Mr. Higbie’s claim. Here, we are deciding only a threshold jurisdictional issue: whether Mr. Higbie is entitled to plead breach and seek money damages under the contract. Because, in my view, the strong presumption that money damages are available for breach of contract answers this question in the affirmative, I respectfully dissent.

. Restatement (Second) of Contracts § 359(1) (1981) (“Specific performance or an injunction will not be ordered if damages would be adequate to protect the expectation interest of the injured party.”); see also Texas v. New Mexico, 482 U.S. 124, 131, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987) ("[SJpecific performance ... [is] an equitable remedy that requires some attention to the relative benefits and burdens that the parties may enjoy or suffer as compared with a legal remedy in damages.”); Javierre v. Cent. Altagracia, 217 U.S. 502, 508, 30 S.Ct. 598, 54 L.Ed. 859 (1910) ("[A] suit for damages would have given adequate relief, and therefore the appellee should have been confined to its remedy at law.... [T]he court would not undertake to decree specific performance....”); Dow Chem. Co. v. United States, 226 F.3d 1334, 1345-46 (Fed. Cir.2000) ("Because rescission is essentially • an equitable remedy, it will not ordinarily be invoked where money damages — in this case damages for breach of contract — will adequately compensate a party to the contract.”).

. The government has not argued that the jurisdictional issue here turns on whether the officials who entered into the agreement with Mr. Higbie lacked authority to obligate funds in the event of breach. Indeed, when asked at oral argument whether the officials had authority to obligate funds, the government *999 responded that the issue of authority "go[es] to the merits of the case.”