# United States Court of Appeals for the Federal Circuit

---

**TONY LAMONTE GREENE, BILLIE WAYNE BYRD,**
*Plaintiffs-Appellants*

**ANTHONY MICHAEL JACKSON, WILLIAM GEORGE COODEY, II, GARRY WAYNE WILSON, LARRY DOAK, ROBERT LEE SMALLEN, CHAVIS LENARD DAY, DANIEL CODY WATKINS,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1898, 2023-1954

---

Appeals from the United States Court of Federal Claims in Nos. 1:22-cv-01064-KCD, 1:22-cv-01185-KCD, Judge Kathryn C. Davis.

---

Decided: April 29, 2024

---

TONY LAMONTE GREENE, Helena, OK, pro se.

BILLIE WAYNE BYRD, Helena, OK, pro se.

RAFIQUE OMAR ANDERSON, Commercial Litigation Branch, Civil Division, United States Department of

Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, FRANKLIN E. WHITE, JR.

————————————

Before DYK, BRYSON, and STOLL, *Circuit Judges.*

BRYSON, *Circuit Judge.*

The appellants, Tony Lamonte Greene and Billie Wayne Byrd, are incarcerated in a state prison in Oklahoma. They and their seven co-plaintiffs filed actions in the Court of Federal Claims ("the Claims Court") contending that their imprisonment is unlawful and seeking relief in the form of monetary compensation from the United States. The Claims Court dismissed the plaintiffs' actions for lack of jurisdiction, and the two appellants brought this appeal. We affirm.

I

The plaintiffs allege that they are members of the Cherokee Nation and that under certain treaties between the Cherokee Nation and the United States, the State of Oklahoma lacked jurisdiction to prosecute and incarcerate them. As a remedy, they each seek $100 per day for unauthorized detention and more than $1,000,000 in compensatory and punitive damages.

The appellants base their lawsuits on the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020). In *McGirt*, the Court held that Oklahoma state courts lack jurisdiction over Indians who commit crimes in areas designated as "Indian Country." For that reason, the appellants contend, their convictions are invalid. They each assert that the federal government is liable for the injuries they have suffered and should be required to compensate them through monetary awards.

As the basis for their theory that the federal government is liable for their unlawful incarcerations, the

appellants' complaints relied on certain provisions of two nineteenth century treaties between the United States and the Cherokee Nation: article 5 of the Treaty with the Cherokees, 7 Stat. 478, 481 (Dec. 29, 1835), and articles 26 and 27 of the Treaty with the Cherokee Indians, 14 Stat. 799, 806 (July 19, 1866). Article 5 of the 1835 treaty provides that the Cherokee Nation shall have the right to enact laws for the protection of its people. 7 Stat. at 481. Articles 26 and 27 of the 1866 treaty provide that the United States shall remove citizens who unlawfully settle on Cherokee land. 14 Stat. at 806.

In their response to the government's motion to dismiss in the Claims Court, the appellants added references to article 3 of the 1835 treaty and article 13 of the 1866 treaty. Article 3 of the 1835 treaty secures, for the United States, the right to use Cherokee natural resources so long as individuals are compensated for any losses. 7 Stat. at 480–81. Article 13 of the 1866 treaty provides that Cherokee tribunals shall retain jurisdiction over cases arising within Cherokee territory. 14 Stat. at 803.

The Claims Court dismissed the appellants' complaints. It held that it lacked jurisdiction over their claims because the appellants failed to show that the treaties on which they relied gave rise to a personal right to monetary relief on their part in the event of a breach of the covenants relating to the exercise of civil and criminal jurisdiction within the Cherokee Nation.

The court explained that claims based on treaties with Indian nations, unlike treaties with foreign nations, can fall within the jurisdiction of the Claims Court because they are treated as "a species of contract." *Tsosie v. United*

*States*, 825 F.2d 393, 401 (Fed. Cir. 1987).[1] While a breach of contract claim against the United States can generally be bought in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), that principle does not apply when the contract is not of a type that normally involves purely monetary relief. In that setting, the court held, the plaintiff must demonstrate that the contract contains provisions that can reasonably be inferred to mandate compensation by the United States. App. 23 (citing *Holmes v. United States*, 657 F.3d 1303, 1315 (Fed. Cir. 2011)).

The Claims Court then examined the treaties on which the appellants relied and concluded that, with respect to the provisions dealing with the scope of civil and criminal jurisdiction, the treaties were not money-mandating. App. 27–29. The court observed that none of the treaty provisions on which the appellants relied "impose[d] any specific fiduciary or other duties on the United States," nor did they "contain language that contemplates an award of money damages for the breach of any such duties." App. 29. With respect to the portion of the 1835 treaty providing for the payment of "just compensation" by the United States, the court observed that the provision relied on by the appellants applied only when the United States is exercising its right to make and establish posts and roads in Cherokee country. App. 30.

From the Claims Court's dismissal order, the appellants took this appeal.[2]

---

[1]    Claims arising under treaties with foreign nations are expressly excluded from the jurisdiction of the Claims Court. *See* 28 U.S.C. § 1502.

[2]    In the aftermath of the *McGirt* decision, the Claims Court has addressed several other claims from Oklahoma state inmates similar to the appellants' and has resolved them all consistently with the court's ruling in this case.

## II

The Claims Court is a court of limited jurisdiction. The jurisdictional statute that applies to this case is the Tucker Act, which grants the Claims Court jurisdiction over claims against the United States "founded either upon the Constitution, or an Act of Congress or regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). As the Claims Court observed, for the court to have jurisdiction under the Tucker Act, the plaintiff must be able to point to a "money-mandating" statute or other provision that requires the federal government to compensate the plaintiff for an injury other than one sounding in tort. *See United States v. Navajo Nation*, 556 US. 287, 290 (2009) (To establish jurisdiction, a plaintiff must identify a separate source of law that "can fairly be interpreted as mandating compensation by the Federal Government" (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976))).

Referring to the 1835 and 1866 treaties with the Cherokee tribes, the appellants argue that the treaties' provisions can fairly be interpreted as "money-mandating." Appellants' Br. 2 (incorporating App. 4–5 by reference). In effect, the appellants contend that the treaty language on which they rely constitutes a promise by the United States that persons in their position would not be subject to state prosecution, and that in the event of a breach of that

---

*See Scott v. United States*, No. 22-1603C, 2023 WL 3455725 (Ct. Fed. Cl. May 15, 2023); *Cramer v. United States*, No. 23-37C, 2023 WL 3072541 (Ct. Fed. Cl. Apr. 25, 2023); *Williamson v. United States*, No. 23-263C, 2023 WL 3032952 (Ct. Fed. Cl. Apr. 20, 2023); *Moore v. United States*, 163 Fed. Cl. 591 (2022).

promise, the federal government would be required to compensate the affected individuals for the resulting injury.

That theory is unpersuasive. The Claims Court can assert jurisdiction over claims grounded in treaties between the United States and Indian nations, which are regarded as "essentially a contract between two sovereign nations." *Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 675 (1979); *Tsosie*, 825 F.2d at 401 (a treaty between the United States and Indian nations is "a species of contract"). Because breach of contract claims generally carry "a presumption that money damages are available," such claims normally fall within the reach of the Tucker Act. *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2014). But "[t]he government's consent to suit under the Tucker Act does not extend to every contract." *Id.* The contract "must be between the plaintiff and the government and entitle the plaintiff to money damages in the event of the government's breach of that contract." *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990).

Those requirements are not satisfied here, for several reasons. First, the treaty provisions the appellants rely upon are not money-mandating. In their brief, appellants cite article 5 of the 1835 treaty and articles 26 and 27 of the 1866 treaty. In article 5 of the 1835 treaty, the United States promised that

> the lands ceded to the Cherokee Nation shall, in no future time, without their consent, be included, within the territorial limits or jurisdiction of any State or Territory. But they shall secure to the Cherokee Nation the right by their national councils to make and carry into effect all such laws as they may deem necessary for the government and protection of the persons and property within their own country belonging to their people or such person as have connected themselves with them.

7 Stat. at 481. Articles 26 and 27 of the 1866 treaty provide that the United States shall protect the people of the Cherokee Nation from "all unauthorized citizens of the United States who may attempt to settle on their lands or reside in their territory," and that it would be "the duty of the United States Indian agent for the Cherokees to have such persons, not lawfully residing or sojourning therein, removed from the nation." 14 Stat. at 806. Neither provision contemplates a monetary remedy should it be breached.

The two other treaty provisions that appellants cited in their complaints likewise do not provide for money damages in the event of breach. Article 3 of the 1835 treaty provides that the United States shall always have "the right to make and establish roads and forts and the free use of as much land, timber, fuel and materials of all kinds for the construction and support of the same as may be necessary; provided that if the private rights of individuals are interfered with, a just compensation therefor shall be made." 7 Stat. at 480–81. While that provision is money-mandating, it applies only to the payment of just compensation for private property taken from individuals.

Article 13 of the 1866 treaty provides as follows:

The Cherokees also agree that a court or courts may be established by the United States in said territory, with such jurisdiction and organized in such manner as may be prescribed by law: *Provided*, that the judicial tribunals of the nation shall be allowed to retain exclusive jurisdiction in all civil and criminal cases arising within their country in which members of the nation, by nativity or adoption, shall be the only parties, or where the cause of action shall arise in the Cherokee nation, except as otherwise provided in this treaty.

14 Stat. at 803.  That provision does not create a right to money damages for an individual asserting that his prosecution violates that provision of the treaty.[3]

Even when viewed in light of the principle that ambiguity or silence in agreements between the United States and a Native American tribe must be read to the tribe's benefit, *Hagen v. Utah*, 510 U.S. 399, 423–24 (1994), the treaty provisions on which the appellants rely cannot be said to be money-mandating.  The cited portions of the two treaties with the Cherokees guarantee the right of self-government to the Cherokee Nation.  But those passages do not provide for monetary compensation for a breach of the promises made by the United States.  As such, the asserted breach of those provisions does not give rise to jurisdiction under the Tucker Act.  *Navajo Nation*, 556 U.S. at 290.

Second, to the extent the treaty provisions at issue are deemed contractual in nature, they reflect agreements between the United States and the tribes.  The agreements addressed the respective rights of sovereignty of the two contracting parties; they did not create contract-based rights in individuals, the breach of which could give rise to monetary remedies for those individual complainants.  A treaty between the United States and an Indian Tribe "cannot provide a basis for the Tucker Act's contract-based

---

[3]    An example of a treaty provision that was held to give rise to an individual's claim for money damages is found in the "bad men" provision of the 1868 treaties with various tribes, including the Navajo Nation.  That provision, which was held to be money-mandating in *Tsosie*, 825 F.2d at 401, stated that "[i]f bad men among the white, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will . . . reimburse the injured persons for the loss sustained."  Navajo Treaty of June 1, 1868, 15 Stat. 667–68.

jurisdiction" where the plaintiff "has not alleged that he was a party to the alleged contract or in privity with a party that was." *Landreth v. United States*, 797 F. App'x 521, 524 (Fed. Cir. 2020).

The appellants have not identified any legal obligation owed by the United States to persons over whom Oklahoma has improperly exercised criminal jurisdiction. Their incarceration is the result of state prosecution, not the product of any action by the federal government. Their theory is that the United States had an obligation to protect them from state law. Not having done so, they argue, the federal government must remedy the illegal detention to which they and others similarly situated are subject, and to do so by the payment of money damages.

Nothing in the treaties on which the appellants rely suggests that the federal government agreed to be held liable for damages in the event that a state sought to exercise criminal jurisdiction within Indian territories. *See Arizona v. Navajo Nation*, 599 U.S. 555, 564 (2023) (holding that a treaty which "set apart a reservation for the use and occupation of the Navajo tribe" did not impose a "duty on the United States to take affirmative steps to secure water for the tribe"). In particular, there is nothing in the treaties to indicate that, if a state enacted legislation governing conduct in Indian territory, the federal government would be required to pay damages to individuals claiming injury from that action.

Third, the claim at issue in this case arises in the context of a criminal proceeding. As this court has noted, "breach of contract arising out of the criminal justice system does not ordinarily give rise to an action under the Tucker Act for damages." *Sanders v. United States*, 252 F.3d 1329, 1335 (Fed. Cir. 2001) (finding no jurisdiction over a claim seeking money damages for an alleged breach by a federal prosecutor of a stipulated agreement not to object to the plaintiff's continued release on bail); *Podlucky v.*

*United States*, No. 2021-2226, 2022 WL 1791065, at *2 (Fed. Cir. June 2, 2022). As this court explained in *Sanders*, "enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not" the Claims Court. 252 F.3d at 1335.

The *Sanders* line of cases is a specific application of the general principle that "Tucker Act jurisdiction may . . . be lacking if relief for breach of contract could be entirely non-monetary." *Higbie v. United States*, 778 F.3d 990, 993 (Fed. Cir. 2015). While the treaties at issue in this case can be regarded as contractual in nature, they are contracts in which any remedies for breach would be non-monetary in nature and would not be the form of remedy that the Claims Court is authorized to grant.[4]

Because the appellants' claim does not fall within the reach of the Tucker Act, we agree with the Claims Court that it lacked jurisdiction to address their demand for damages from the United States attributable to their prosecution and incarceration by the State of Oklahoma.

## AFFIRMED

COSTS

No costs.

---

[4]    An exception to that principle is found in 28 U.S.C. §§ 2513(a)(1) and 1495, which respectively create a cause of action for money damages against the United States for "unjust conviction and wrongful imprisonment" under certain circumstances and confer jurisdiction on the Court of Federal Claims "for damages by any person unjustly convicted of an offense against the United States and imprisoned." That statute does not apply to state prisoners such as Mr. Greene and Mr. Byrd.