# In the United States Court of Federal Claims

No. 13-270C
(Filed November 14, 2013)

```
*************************************
                                    *
RICHARD HIGBIE,                     *          28 U.S.C. § 1500; 28 U.S.C. §
                                    *          1491; subject matter
              Plaintiff,            *          jurisdiction.
                                    *
       v.                           *
                                    *
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
*************************************
```

## OPINION AND ORDER

In this action, Plaintiff Richard Higbie ("Higbie") alleges that the United States (the "Government") breached the confidentiality provision of an "Agreement to Mediate" ("Mediation Agreement"). Higbie seeks $500,000 in compensation for this alleged breach. Higbie's original action was filed in the United States District Court for the Northern District of Texas and the pertinent portion of that action was transferred to this Court on April 17, 2013. Higbie filed his transfer complaint in this Court on July 15, 2013. The Government then filed the instant motion to dismiss, pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6), and the briefing was completed on October 25, 2013.

Because the Court finds that the Government's Tucker Act challenge requires dismissal of this case, it does not reach the merits of the Government's 12(b)(6) arguments. For the reasons that follow, the Government's motion to dismiss is GRANTED.

## I.     Background[1]

Higbie is an employee of the Bureau of Diplomatic Security ("BDS"), a division of the U.S. Department of State ("State Department"). Compl. at ¶ 2. On January 15, 2009, Higbie contacted an EEO counselor complaining that the State Department had

---

[1] Unless specifically stated, all "Dkt." references in this section refer to the docket filings in Higbie's case pending in the Northern District of Texas at Case No. 3:11-cv-02636-L. Any citations to "Compl." refer to Higbie's Transfer Complaint, found at Docket No. 5 in this Court's record.

1

discriminated against him. *Id.* at ¶ 5. The case was referred to mediation. *Id.* at ¶ 6. Prior to engaging in mediation, the parties signed a document entitled "EEO/Alternative Dispute Resolution Agreement to Mediate" ("Mediation Agreement"). *Id.* After the mediation fell apart, an EEO investigator undertook an investigation and prepared a report. *Id.* at ¶ 7. During the investigation, Government officials Marion Cotter ("Cotter") and Jeffrey Thomas ("Thomas") provided affidavits. *See id.* at ¶¶ 8-9.

On October 5, 2011, Higbie filed suit in the Northern District of Texas. Higbie alleged that the State Department retaliated against him (Count I), created a hostile work environment (Count II), and that the agency had breached the confidentiality clause of the 2009 Mediation Agreement (Count III). Count III was rooted in the affidavits filed by Cotter and Thomas. Higbie took the position that the affidavits violated the confidentiality provision of the Mediation Agreement by disclosing "information held under strict confidentiality guidelines set by the aforementioned [Mediation Agreement]." *See* Dkt. 1 ("Texas Compl.") at ¶ 54. Higbie alleged that the affidavits "demonstrated a willful attempt by [Cotter and Thomas] to further discriminate and retaliate against the Plaintiff for engaging in related protected activity." *Id.* at ¶ 55. Higbie also asserted that the breach of the confidentiality clause constituted a violation of the Alternative Dispute Resolution Act of 1996 ("ADRA"). *Id.* at ¶ 86.

The State Department filed a motion to dismiss Count III and Higbie was granted leave to file an amended complaint, which he filed on June 25, 2012. The Amended Complaint was similar to the original complaint; the major difference was that, instead of asserting a violation of the ADRA, Higbie's amended complaint alleged that the same actions created a cause of action "[p]ursuant to the common laws of the State of Texas." *Compare id.* at ¶ 86 *with* Dkt. 10 ("Texas Am. Compl.") at ¶ 97.

On January 29, 2013, Higbie filed a motion for leave to file a second amended complaint and a motion to transfer his contract claim to this Court. Both motions were granted and, on February 8, 2013, Higbie filed another amended complaint which still stated a cause of action for breach of the confidentiality clause of the Mediation Agreement. *See* Dkt. 35 ("Texas Sec. Am. Compl.") at ¶ 109.

The contract claim was transferred to this Court on April 17, 2013. Unlike the various complaints filed in the Northern District of Texas, Higbie's Complaint here states only one cause of action for the breach of the Mediation Agreement. *See* Compl. at ¶¶ 11-12. On September 13, 2013, pursuant to RCFC 12(b)(1) and 12(b)(6) the Government moved to dismiss Higbie's action in front of this Court.

## II.     Legal Standard

A motion brought pursuant to RCFC 12(b)(1) challenges the Court's subject matter jurisdiction. *See* RCFC 12(b)(1). When faced with a motion to dismiss for lack of subject matter jurisdiction, a court must assume that all undisputed facts alleged in the complaint are true, and it must draw all reasonable inferences in the plaintiff's favor.

2

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

### III.   Discussion

The Government raises two arguments as to why this Court lacks jurisdiction to hear Higbie's case. First, it argues that Higbie's Complaint here is barred by operation of 28 U.S.C. § 1500. Second, the Government argues that the Court lacks jurisdiction because the Mediation Agreement does not create a right to money damages.

*a.   28 U.S.C. § 1500 Does Not Bar Higbie's Action in this Court*

The Government first argues that Higbie's claim is barred by operation of 28 U.S.C. § 1500, which provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

"The rule is more straightforward than its complex wording suggests. The CFC has no jurisdiction over a claim if the plaintiff has another suit *for or in respect to* that claim pending against the United States or its agents." *United States v. Tohono O'Odham Nation*, 131 S.Ct. 1723, 1727 (2011) (emphasis added). This statutory provision "effects a significant jurisdictional limitation" upon this Court; it is designed to "save the Government from burdens of redundant litigation." *Id.* at 1729-30.

The Supreme Court emphasized in *Tohono* that § 1500 "bars jurisdiction in the CFC not only if the plaintiff sues on an identical claim elsewhere—a suit 'for' the same claim—but also if the plaintiff's other action is related although not identical—a suit 'in respect to' the same claim." *Id.* at 1728. Thus, the Supreme Court determined that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on *substantially the same operative facts*, regardless of the relief sought in each suit." *Id.* at 1731 (emphasis added). Applying the Supreme Court's ruling in *Tohono*, the Federal Circuit has explained that, "[t]o determine whether § 1500 applies, a court must make two inquiries: (1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013).

The first *Brandt* inquiry must be answered in the affirmative. Because Higbie's claim before this Court was removed from his already-pending action in the Northern District of Texas, the Texas case qualifies as an earlier-filed suit. *See Griffin v. United*

3

*States*, 590 F.3d 1291, 1293 (Fed. Cir. 2009) ("if a plaintiff files multiple related claims in district court, and the court transfers one of those claims to the Court of Federal Claims, the original claims are 'pending' at the time the transferred claim is considered filed, and § 1500 *may* deprive the Court of Federal Claims of jurisdiction over the transferred claim.") (emphasis added).

The true dispute revolves around the second *Brandt* inquiry. The Government asserts that Higbie's claim here revolves around substantially the same operative facts as his action in the Northern District of Texas, such that the Texas action is "for or in respect to" the same claim asserted here. *See* Gov't Mot. at 9-10. Essentially, the Government argues that the breach of the confidentiality clause is cited by Higbie in support of his retaliation claim, such that Higbie's claim here is "in respect to" his retaliation claim in Texas.

Higbie responds that the contract claim was severed from the Texas case, while the non-contract claims in the Texas case are unrelated to the breach of the confidentiality clause. His position appears to be that the severance of the contract claim from the Texas case renders his action here unrelated to the Texas proceedings. Further, Higbie claims that his case in Texas no longer asserts the breach of the confidentiality clause as part of his retaliation claim.

Although the parties dispute which version of Higbie's Texas complaint—the Second Amended Complaint or the Third—controls, that point is irrelevant to the Court's decision. The true question is whether Higbie's claims in Texas are "for or in respect to" substantially the same operative facts as is his case here. *See Tohono*, 131 S.Ct. at 1727. It is clear that they are not.

Higbie's claim here is for breach of contract, while his claims in Texas are for discrimination and retaliation. It appears to the Court that the only indication that these claims are remotely based on the same operative facts are two paragraphs which appear in both Higbie's Second and Third Amended Complaints. The first of these paragraphs states:

> In separate affidavits, both "Responding Officials" Marion Cotter (Special Agent in Charge of the Houston Field Office) and Jeffery Thomas (Supervisory Special Agent of the Houston Field Office) provided the EEO assigned Investigator, Robert Maddern, information held under strict confidentiality guidelines set for by the aforementioned ADR Mediation [Agreement]. Both respective Responding Officials included in their affidavits information concerning the underlying facts of the ADR proceeding and records generated as part of the proceeding that are strictly prohibited from being made part of the EEO complaint record.

Second Am. Compl. at ¶ 54; Third Am. Compl. at ¶ 54. Immediately after this paragraph, both versions of Higbie's Texas complaint state that "[t]his demonstrated a

willful attempt by the Responding Officials to *further discriminate and retaliate* against the Plaintiff for engaging in related protected activity." Second Am. Compl. at ¶ 55; Third Am. Compl. at ¶ 55 (emphasis added). In other words, in the Texas proceedings Higbie has asserted that the Government's alleged breach of the Mediation Agreement supports his claim for retaliation. The Government relies on these two paragraphs in support of its assertion that Higbie's claim here is barred by §1500 due to the Texas case.

Higbie responds that the breach of confidentiality is "incapable of serving as an adverse employment action that would allow Plaintiff to prevail on his retaliation claim or hostile work environment claim…" Pltf. Resp. at 6. The Court is not concerned with this point, and makes no judgment as to the viability of Higbie's assertion of the breach in support of his retaliation claim. In this Court's mind, the key is that the alleged disclosure of confidential information is a single fact which, if true, would be dispositive as to Higbie's contractual claim. Meanwhile, Higbie's retaliation claim requires *far more* than the simple fact of disclosure. In an instance such as this, where a single fact would be dispositive in one case and somewhere between completely irrelevant and minimally relevant in another, the two cases are not "based on substantially the same *operative* facts." *Tohono*, 131 S.Ct. at 1730 (emphasis added).

Because the operative facts in the case before this Court differ substantially from the operative facts before the Eastern District of Texas, this Court concludes that § 1500 does not divest the Court of jurisdiction to hear Higbie's claim. This is not dispositive, however, because the same cannot be said for the Government's other argument for dismissal.

### b. *The Mediation Agreement is Not Money-Mandating*

The Government posits that the Mediation Agreement did not contemplate the award of money damages in the case of a breach, such that this case falls beyond the jurisdiction circumscribed by the Tucker Act. Pursuant to the Tucker Act, 28 U.S.C. § 1491, this Court maintains jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any *express or implied contract* with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). The Tucker Act itself does not create a substantive cause of action, which means that "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in part). "In the parlance of Tucker Act cases, that source must be 'money-mandating.'" *Id.* (citations omitted).

The Government argues that nothing in the Mediation Agreement indicates the intent to allow money damages in the event of a breach. Instead, it argues that the logical remedy for breach of a confidentiality clause in a mediation agreement is excluding from judicial proceedings any evidence derived from the mediation. *See* Gov't Mot. at 13. Higbie responds that there is a presumption, in the civil context, that a damages remedy is

5

available upon the breach of an agreement. Pltf. Resp. at 9 (citing *Holmes*, 657 F.3d at 1313-14).

Higbie is correct, of course, that there is a presumption that a damages remedy is available in the civil context. *See Holmes*, 657 F.3d at 1314; *see also Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001) ("[I]n the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement."). However, the same case that Higbie cites for that presumption also states that in circumstances where a contract "could involve purely nonmonetary relief… it [i]s proper for the court to require a demonstration that the agreements could fairly be interpreted as contemplating money damages in the event of breach." *Holmes*, 657 F.3d at 1315. If this Court were to blindly follow the money damages presumption, which is basically what Higbie asks it to do, it would run afoul of the Federal Circuit's admonishment that "consent to suit under the Tucker Act does not extend to every contract." *Id.* at 1309.

Instead, where a contract could reasonably be interpreted to involve purely nonmonetary relief, this Court may require a plaintiff to render proof that the contract can "fairly be interpreted as mandating compensation by the Federal Government." *Id.* (quoting *United States v. Navajo Nation*, 129 S.Ct. 1547, 1551-52 (2009)). In this instance, the contract clearly does not contemplate money damages. As with all forms of mediation, the contract is driven by the hope that parties will fully and fairly discuss settlement, secure in the knowledge that their statements cannot be used against them in future proceedings. As the Government argues, the logical "remedy" for a breach is the exclusion from proceedings any evidence uncovered by way of the breach.

Higbie next attempts to demonstrate that the Mediation Agreement can fairly be interpreted to mandate money damages. The basis for this argument is unclear, at best. For example, Higbie again relies on *Holmes*, which addressed settlement agreements pursuant to Title VII and found that the settlement agreements could fairly be construed to include monetary. *See Holmes*, 657 F.3d at 1315. The Federal Circuit did not accidentally stumble on that conclusion, as Higbie would have this Court do, but instead reached its conclusion based on the evidence. As the Federal Circuit reasoned, the purpose of the Agreements was to prevent the plaintiff from being denied future employment based on his record. "In short, the agreements inherently relate to monetary compensation through relationship to Mr. Holmes's future employment." *Id.* at 1316.

No such issue arises here. The Mediation Agreement did not address anything remotely monetary; it is limited to the parties' conduct during and after the mediation process. The entire document is full of statements pertaining to the limitations upon mediation. *See* Docket No. 5-1 at 9-11. While Higbie notes that the *Holmes* court attached significance to the fact that "there is no language in the agreements indicating that the parties did not intend for money damages to be available in the event of breach," *Holmes*, 657 F.3d at 1316, this agreement is wholly unlike those in *Holmes*.

6

After arguing that *Holmes* mandates a finding that the Mediation Agreement provides for money damages, Higbie turns to a series of citations that speak generally to the issue of confidential mediation. *See* Pltf. Resp. at 10-11. Nothing in these citations indicates that money damages are awarded for breach of mediation confidentiality.

Although Higbie does not raise another argument in direct response to the Government's assertion that the Mediation Agreement does not contemplate money damages, his response to the Government's 12(b)(6) argument touches on the same issue. There, the Government argued that Higbie's claim for $500,000 is completely arbitrary (it is). Higbie's response to this argument attempts to raise the specter of money damages for a breach of confidentiality, so the Court deems it appropriate to consider that portion of Higbie's argument here. Most of Higbie's citations here fail once again to raise anything resembling a money award for breach of mediation confidentiality, but a few of the sources do at least require further analysis.

Higbie first relies on a case from the Supreme Court of California which notes that "confidentiality is essential to effective mediation." *Foxgate Homeowner's Ass'n, Inc. v. Bramalea California, Inc.*, 26 Cal.4th 1, 15 (2001). Although Higbie himself fails to point this out, the case did address the possibility of money sanctions for a violation of court-ordered mediation. *Foxgate*, however, is unpersuasive for two reasons. First, it is a California case analyzing California law, and it is therefore not controlling over a Texas contract claim. Second, the actions that gave rise to the request for sanctions had nothing to do with a breach of confidentiality in mediations. Rather, they mirror Higbie's actions as alleged in the Cotter and Thomas affidavits: a refusal to participate in mediation in good faith. Even with these points in mind, the monetary sanctions in *Foxgate* were overturned, and the court recognized that the appropriate remedy was exclusion of the evidence or, in cases where the evidence was disclosed during proceedings, a new hearing or trial. *See id.* at 18 ("Any reference to a mediation during any subsequent trial is an irregularity in the proceedings of the trial… Any reference to a mediation during any other subsequent noncriminal proceeding is grounds for vacating or modifying the decision in that proceeding, in whole or in part, and granting a new or further hearing on all or part of the issues, if the reference materially affected the substantial rights of the party requesting relief."). Thus, aside from the overturned monetary sanctions, this decision actually undermines Higbie's argument by showing that the proper remedy for breach of mediation confidentiality is exclusion of the improper evidence or a new hearing. This is precisely the point that the Government makes.

After another long series of citations to sources that have absolutely nothing to do with money damages, Higbie refers this Court to a series of confidentiality cases that do award money damages. The first is *Hallmark Cards v. Murley*, 703 F.3d 456 (8th Cir. 2013), and the second Higbie only refers to as "*Southwestern Energy Co.*"[2] In *Hallmark*,

---

[2] It appears that this case is *Southwestern Energy Production Co. v. Berry-Helfand*, -- S.W.3d ---, 2013 WL 3461644 (Tex. App. July 10, 2013). The Court assumes this is the case to which Higbie refers because Higbie states that the jury awarded a verdict of $11.4 million and the Court of Appeals of Texas upheld an award of $11,445,000.

the jury awarded damages of $860,000 for disclosing confidential information while the *Southwestern* jury awarded $11.4 million. Higbie's reference to these cases borders on frivolous. These are *trade secret* cases. The confidentiality concerns in trade secret cases differ dramatically from the concerns of confidentiality in mediation because the confidentiality of a trade secret is the source of its economic value. *See* Uniform Trade Secrets Act § 1.4 (defining trade secret, in part, as something that "derives *independent economic value*, actual or potential, from *not being generally known…*"). To the extent that such cases are even remotely relevant to this action, it is only to demonstrate that trade secret nondisclosure agreements are a type of contract which may not expressly reference money damages but which inherently provide a basis for a monetary award.

Finally, Higbie informs the Court that statutes "providing causes of action for money damages [for breaching mediation confidentiality] are becoming more common each year." Pltf. Resp. at 18. In support of this point, Higbie cites *one* law—a Florida state law. Meanwhile, Higbie's Complaint makes clear that all the facts relevant to his case occurred in Texas. The Florida law is irrelevant to his cause of action.

In sum, the Government has properly raised concerns over the question of whether the Mediation Agreement contemplates the award of money damages in case of breach. Higbie, by relying only on unrelated or otherwise uninformative sources instead of the contract at issue, has failed to respond to the Government's argument. Dismissal is therefore appropriate on the basis that the Mediation Agreement cannot fairly be interpreted as contemplating money damages in the event of breach.

## IV.    Conclusion

As the foregoing makes clear, this Court lacks jurisdiction over Higbie's claim. Although Higbie's action is not barred here because it is not "for or in respect to" the same claim that he has asserted in the Northern District of Texas, his action is barred because the Mediation Agreement cannot fairly be interpreted as contemplating money damages in the event of breach.

For these reasons, the Government's motion to dismiss is GRANTED and this action is dismissed. The Clerk is directed to mark this case closed and enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge
