# United States Court of Appeals for the Federal Circuit

---

**RICHARD HIGBIE,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2014-5042

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00270-EJD, Judge Edward J. Damich.

---

Decided: January 14, 2015

---

DAMON MATHIAS, Schulman Mathias PLLC, of Dallas, Texas, argued for plaintiff-appellant.

DOMENIQUE GRACE KIRCHNER, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, STEVEN J. GILLINGHAM, Assistant Director, and MICHAEL P. GOODMAN, Trial Attorney.

---

Before LOURIE, REYNA, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA.

Dissenting opinion filed by *Circuit Judge* TARANTO.

REYNA, *Circuit Judge.*

Richard Higbie appeals the Court of Federal Claims' dismissal of his claim for money damages against the United States Government for alleged breach of a confidentiality provision in an alternative dispute resolution agreement. The Court of Federal Claims determined that a purely non-monetary form of relief was available for any potential breach and, as a result, required Mr. Higbie to show the agreement could be fairly interpreted to contemplate damages. The Court of Federal Claims found that Mr. Higbie failed to make the required showing and dismissed his case for lack of jurisdiction under the Tucker Act. We agree that Mr. Higbie has not shown that the agreement in question can be fairly interpreted to contemplate money damages in the event of breach. As a result, the Court of Federal Claims lacked jurisdiction under the Tucker Act. We therefore *affirm.*

## BACKGROUND

Mr. Higbie was employed as a Senior Criminal Investigator in the Dallas office of the Bureau of Diplomatic Security, a division of the United States State Department ("State Department"). In January 2009, Mr. Higbie contacted an equal employment opportunity ("EEO") counsel to complain of alleged reprisal by the State Department for activity he had engaged in which he claimed was protected under the Civil Rights Act of 1964. Mr. Higbie filed a formal complaint in April 2009 and submitted a request that his complaint be processed through the State Department's alternative dispute resolution ("ADR") program. The Government approved his case for mediation.

During the lead up to the mediation, Mr. Higbie repeatedly inquired whether the mediation proceedings would be confidential. On several occasions, a State Department representative confirmed that they would be. According to Mr. Higbie, he was "purposefully negotiating" for confidentiality of the mediation by his repeated questions so as to prevent his supervisors from "using anything that occurred" during the proceedings against him in his employment.

Three of Mr. Higbie's supervisors, including Marian Cotter and Jeffrey Thomas, signed the mediation agreement that would govern the proceedings. That agreement included the following confidentiality provision:

> Mediation is a confidential process. Any documents submitted to the mediator(s) and statements made during the mediation are for settlement purposes only.

J.A. 127 (underlining in original). The parties did not resolve their dispute through mediation, and the EEO investigation continued. After the mediation, Ms. Cotter and Mr. Thomas provided affidavits to the EEO investigator, which are the basis for Mr. Higbie's claim for breach of contract. In their affidavits, Ms. Cotter and Mr. Thomas discussed the nature and content of Mr. Higbie's statements in the mediation proceedings and cast his participation in the proceedings in a negative light.

In October 2011, Mr. Higbie filed suit in the Federal District Court for the Northern District of Texas, asserting numerous causes of action, including claims for retaliation and discrimination. Mr. Higbie's complaint also included a claim for violation of the Alternative Dispute Resolution Act of 1996 ("ADRA claim") arising out of the two affidavits, provided by Ms. Cotter and Mr. Thomas, to the EEO-assigned investigator. According to Mr. Higbie, the information obtained through the mediation process was governed by a strict confidentiality provision outlined

in the mediation agreement, and the disclosure of the affidavits constituted a breach of that provision.

The State Department moved to dismiss the ADRA claim for failure to state a claim upon which relief can be granted because the ADRA statute does not provide for recovery of money damages for breach of a confidentiality agreement. The district court granted the motion and also granted Mr. Higbie leave to file an amended complaint. Through amendment, Mr. Higbie removed his ADRA claim and, in its stead, alleged a claim sounding in contract for breach of the confidentiality provision. Mr. Higbie moved to transfer the newly added contract claim to the Court of Federal Claims. The district court granted the motion, leaving Mr. Higbie's other claims pending before the district court. Mr. Higbie then filed a transfer complaint in the Court of Federal Claims.

After the transfer, the Government moved in the Court of Federal Claims to dismiss Mr. Higbie's complaint for lack of jurisdiction on the grounds that the mediation agreement did not meet the judicially-imposed requirement that the agreement in question be money-mandating. In opposing the motion, Mr. Higbie argued that all mediation agreements contemplate money damages for breach of confidentiality agreements. Mr. Higbie drew support from a single case from California dealing with money damages, a single state statute from Florida discussing money damages for breach of confidentiality in mediation, and a series of other cases having no relation to the award of money damages for breach of a confidentiality provision.

The Court of Federal Claims found Mr. Higbie's arguments unpersuasive. The court acknowledged the presumption that a damages remedy is available for breach of contract. Where a purely non-monetary remedy exists, however, the court explained that it can require a showing that the contract can be fairly read to contem-

plate monetary damages before it may exercise jurisdiction under the Tucker Act. Here, the court found the agreement in the dispute "clearly does not contemplate money damages," nor does it "address anything remotely monetary." *Higbie v. United States*, 113 Fed. Cl. 358, 364 (2013). Further, it found that the non-binding authorities Mr. Higbie cited do not establish that money damages should be awarded for any breach of mediation confidentiality in this case. *Id.* at 365. Thus, the Court of Federal Claims concluded that Mr. Higbie had not met his burden of showing the agreement could be fairly read to contemplate money damages, and dismissed his complaint for lack of jurisdiction.

Mr. Higbie appeals the dismissal of his complaint. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review a dismissal by the Court of Federal Claims for lack of jurisdiction *de novo. Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011).

## I

The Tucker Act confers jurisdiction upon the Court of Federal Claims over "any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1) (2011). This jurisdictional provision operates to waive the sovereign immunity of the United States for claims premised on other sources of law, such as a contract or statute. *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). The Tucker Act, however, does not create a substantive cause of action, and, as such, "a plaintiff must identify a separate source of substantive law that creates the right to monetary damages." *Fisher v. United States*, 402 F.3d 1167, 1127 (Fed. Cir. 2005). While the separate source of law need not explicitly provide for enforcement through damages, liability is triggered only if the source can be

fairly interpreted as mandating compensation from the Government. *Navajo Nation*, 556 U.S. at 290 (citation omitted).

Contract law is a separate source of law compensable under the Tucker Act. *See id.* As with private agreements, when a government contract is breached, there is a presumption that a damages remedy will be available. *Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001). Typically, in a contract case, the presumption that money damages are available satisfies the Tucker Act's money-mandating requirement. *Holmes*, 657 F.3d at 1314.

The Government, however, has not consented to suit under the Tucker Act for every contract. *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (citations omitted). For instance, contracts that are entirely concerned with the conduct of parties in a criminal case, without a clear, unmistakable statement triggering monetary liability, do not invoke Tucker Act jurisdiction. *Sanders*, 252 F.3d at 1336. Express disavowals of money damages within a contract's terms likewise defeat jurisdiction. *Holmes*, 657 F.3d at 1314. Tucker Act jurisdiction may also be lacking if relief for breach of contract could be entirely non-monetary. In such a case, it is "proper for the court to require a demonstration that the agreements could fairly be interpreted as contemplating monetary damages in the event of breach." *Id.* at 1315.

## II

Mr. Higbie argues that he presented sufficient evidence to demonstrate that the mediation agreement can fairly be interpreted as contemplating monetary damages. To support his contention, Mr. Higbie purports to rely on (1) the terms of the contract itself; (2) negotiations in which he asked the government to confirm that the mediation would be confidential; and (3) instances of legislative and judicial support for awarding damages for breach

of a confidentiality provision. In an effort to show that the terms of the contract fairly contemplate money damages, Mr. Higbie cites portions of the Equal Employment Opportunity Commission's website, which recognize the importance of confidentiality to mediation, and congressional findings discussing the general benefits of ADR proceedings, such as efficiency at achieving settlements and reducing backlog in the federal courts.

In response, the Government argues that there is no indication the terms of the mediation agreement contemplated money damages. Regarding Mr. Higbie's requests that the Government confirm the confidentiality of the proceedings, the Government contends that Mr. Higbie has not shown that he contemplated money damages for a breach of the confidentiality provision, or that he communicated any such belief to the Government. Rather, according to the Government, the confidentiality provision in question appears to be nothing more than the standard clause that appears in all such mediation agreements. Relying on Rule 408 of the Federal Rules of Evidence, which deems inadmissible as evidence the "conduct or statements made in compromise negotiations," the Government argues the appropriate, non-monetary remedy in such circumstances is exclusion of any improper disclosures from future proceedings.

As a threshold issue, we must decide whether it was appropriate for the Court of Federal Claims to require Mr. Higbie to show that the agreement fairly contemplated monetary damages. While the agreement does not provide a monetary remedy, it does restrict the use of statements made during mediation to "settlement purposes *only*." J.A. 27 (emphasis added). In other words, any statements made during the mediation must not be used for any purpose other than settlement. Thus, the agreement itself provides a remedy for the breach of the non-disclosure provision: exclusion of statements made during mediation from proceedings unrelated to the mediation. Per the

terms of the agreement, the affidavits of Ms. Cotter and Mr. Thomas could be excluded from the EEO investigation. The appropriateness of this remedy is consistent with Rule 408 of the Federal Rules of Evidence, which excludes the content of parties' negotiations from other legal proceedings. This provision requiring the exclusion of statements made during the mediation proceeding from any other proceeding is a purely non-monetary remedy provided by the agreement. It follows that the Court of Federal Claims did not err in imposing the requirement to show that the agreement could be fairly interpreted as contemplating money damages. *Holmes*, 657 F.3d at 1315.

Next, we consider whether Mr. Higbie has shown that the agreement can be fairly interpreted as contemplating money damages. On appeal, Mr. Higbie argues the terms of the agreement itself show that it contemplates money damages, but he does not point to a single provision in the agreement indicating money damages were contemplated. Having reviewed the agreement, we perceive no error in the Court of Federal Claims' finding that it does not expressly contemplate money damages. As such, the terms of the agreement itself do not support the assertion that the agreement can be fairly interpreted to contemplate money damages.[1]

---

[1] In *Cunningham v. United States*, 748 F.3d 1172 (Fed. Cir. 2014), a case neither party cited, this court considered breach of a confidentiality provision in a settlement agreement and found that the agreement was money-mandating. In *Cunningham* (as in *Holmes*), the agreement in question was a settlement agreement that created specific duties owed by the Government to that particular plaintiff, unlike this case where the agreement employs boilerplate common to agreements associated with similar mediation proceedings. The agreement in this case served to guide the mediation process, which in

Similarly, Mr. Higbie relies on his negotiations with the Government, without pointing to any communication in which it is apparent that either party contemplated the availability of money damages for breach of the agreement. Thus, the confidentiality discussions also do not support the assertion that the agreement contemplated money damages.

Finally, Mr. Higbie's appeal to non-binding and inapplicable legal authority and governmental policy is unavailing. Mr. Higbie cited only non-controlling state law before the Court of Federal Claims and cites no case law in his appeal brief before this court. The single statute he cites governs breaches in Florida. It is well-settled that state law generally does not govern disputes involving contracts to which the Government is a party. *Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986). Additionally, the governmental policies on which Mr. Higbie relies show that confidentiality is an important component of the mediation process but do not speak to the remedy available for breach of confidentiality. Our applicable case law focuses on the existence of a money-mandating provision in the agreements involved in each dispute, not the principles which might be important in legal proceedings involving the Government and a private party. *See, e.g.*, *Holmes*, 657 F.3d at 1315. In sum, Mr. Higbie fails to show that the mediation agreement involved in this dispute is money-mandating.

## CONCLUSION

The Court of Federal Claims did not err in requiring Mr. Higbie to show that the mediation agreement could be

---

the end was unsuccessful as the parties failed to reach settlement. Additionally, Mr. Higbie does not argue that the agreement creates any specific duty owed by the Government that applies particularly to him.

fairly interpreted to contemplate money damages because non-monetary relief was available. Mr. Higbie has failed to make such a showing. The Court of Federal Claims correctly concluded that it does not have jurisdiction over Mr. Higbie's case under the Tucker Act and, therefore, properly dismissed his claim for breach.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**RICHARD HIGBIE,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2014-5042

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00270-EJD, Judge Edward J. Damich.

---

TARANTO, *Circuit Judge*, dissenting.

I do not see a sufficient justification for excepting the confidentiality promise in the mediation agreement at issue from the strong general rule that contracts implicitly carry a damages remedy for their breach. In my view, the default damages remedy is available to Mr. Higbie if he proves entitlement to it, and the Court of Federal Claims therefore has jurisdiction under the Tucker Act. I would reverse the jurisdictional dismissal and remand for the parties to address the merits. Accordingly, I dissent from the affirmance of the Court of Federal Claims' judgment dismissing Mr. Higbie's case for lack of jurisdiction.

A

This court's decision in *Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011), rested on its recognition of a principle long understood in contract law: "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion) (citing Restatement (Second) of Contracts § 346, cmt. a (1981); 3 E. Farnsworth, Contracts § 12.8, p. 185 (1990)), cited in *Holmes*, 657 F.3d at 1314. That principle broadly applies to establish Tucker Act jurisdiction in contract disputes, even though contracts themselves often do not provide for damages relief: the default remedy from background law suffices. As *Holmes* stated, "[n]ormally[,] contracts do not contain provisions specifying the basis for the award of damages in case of breach. . . . [I]n a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." 657 F.3d at 1314 (internal quotation marks and citation omitted).

There is good reason to follow, rather than depart from, that well-established and broadly applicable default rule here. For one thing, strong adherence to background rules is especially important with contracts. In contract interpretation, "a court properly takes account of background legal rules—the doctrines that typically or traditionally have governed a given situation when no agreement states otherwise. Indeed, ignoring those rules is likely to frustrate the parties' intent and produce perverse consequences." *US Airways, Inc. v. McCutchen*, 569 U.S. ___, 133 S. Ct. 1537, 1549 (2013) (citations omitted).

More specifically, money damages are available as a remedy for breach of confidentiality provisions of contracts in a variety of contexts. *See, e.g., Youtie v. Macy's*

*Retail Holding, Inc.*, 626 F. Supp. 2d 511, 523–27 (E.D. Pa. 2009) (holding that money damages were available for a breach of contract claim for violation of a confidentiality provision of an employment contract); *Davidson v. Cao*, 211 F. Supp. 2d 264, 280–84 (D. Mass. 2002) (denying a motion to dismiss a breach of contract claim for money damages for violation of a confidential disclosure agreement); *Doe v. Portland Health Centers, Inc.*, 782 P.2d 446, 448–49 (Or. App. 1989) (denying a motion to dismiss a breach of contract claim for money damages for violation of a "patient confidentiality statement," stating that "we do not agree that . . . damages [other than those for emotional suffering] are unavailable as a matter of law"). Doubtless there are complexities, but there appears to be nothing out of the ordinary or unexpected about the availability of monetary relief, where harm and damages are proved, for breach of confidentiality promises.

The limited case law on confidentiality commitments in mediation agreements seems to be in accord. *E.g.*, *Bethlehem Area Sch. Dist. v. Zhou*, No. 09-03493, 2012 WL 930998, at *1 (E.D. Pa. Mar. 20, 2012) ("This matter presently involves a contract provision that proceedings before a mediator be kept confidential. I conclude that the contract was breached, claimant Diana Zhou's motion for summary judgment must be granted, she is entitled to nominal damages of $1, and at trial she may present evidence of actual damages."); *Bashaw v. Johnson*, No. 11-2693-JWL, 2012 WL 1623483, at *3–4 (D. Kan. May 9, 2012) ("According to defendant, plaintiffs, after the mediation failed, violated the confidentiality agreement. . . . [Defendant] certainly [has] a plausible claim for damages stemming from the alleged breach."). The government has not identified any on-point contrary authority.

## B

The default rule is not absolute, but I do not see a basis for an exception in this case.

1. As *Holmes* noted, one exception applies when "[a] contract expressly disavow[s] money damages." *Holmes*, 657 F.3d at 1314. But there is no such express disavowal in the agreement at issue here. Nor is there a sound basis for finding an implicit disavowal.

The confidentiality provision declares that "[m]ediation is a confidential process" and that "statements made during the mediation are for settlement purposes only." J.A. 127 (underlining deleted). The government and the majority view this as providing affirmatively for the "remedy" of exclusion from evidence. Even if that characterization is accepted, however, the provision cannot reasonably be taken to eliminate the default monetary remedy. The specification of the evidentiary "remedy" has a ready explanation that in no way implies ouster of the monetary remedy. After all, one familiar background principle is that the availability of monetary damages, where such damages are adequate, renders *un*available equitable relief, such as specific performance of the confidentiality/settlement-use-only promise.[1] With that preference for legal remedies in the

---

[1]    Restatement (Second) of Contracts § 359(1) (1981) ("Specific performance or an injunction will not be ordered if damages would be adequate to protect the expectation interest of the injured party."); *see also Texas v. New Mexico*, 482 U.S. 124, 131 (1987) ("[S]pecific performance . . . [is] an equitable remedy that requires some attention to the relative benefits and burdens that the parties may enjoy or suffer as compared with a legal remedy in damages."); *Javierre v. Cent. Altagracia*, 217 U.S. 502, 508 (1910) ("[A] suit for damages would have given adequate relief, and therefore the appellee should have been confined to its remedy at law. . . . [T]he court would not undertake to decree specific performance . . . ."); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1345–46 (Fed.

background, it makes perfect sense for a contract to provide expressly for a non-monetary remedy to ensure its availability, without any implication that the new remedy is to be exclusive.  The natural inference is that this kind of specified remedy supplements but does not supplant the default damages remedy.  A fortiori for a provision that is not even worded as a "remedy" provision.

If the new remedy, or other aspects of the contractual context, were somehow inconsistent with preserving the background rule, an implication of override might be warranted.  *Cf. United States v. Fausto*, 484 U.S. 439, 452 (1988) (background presumption that Congress intends judicial review of agency action to be available is displaced when that presumption is contrary to a specific statutory scheme at issue).  But there has been no such showing here.  As indicated by the authorities allowing damages for mediation-confidentiality breach, and the absence of contrary authorities, the availability of a remedy of money damages—which must be proven, of course—appears to be consistent with the mediation context and the specific remedy of evidentiary exclusion.  The government has not explained why there is any inconsistency.

Moreover, the government has not shown—it has not even meaningfully contended—that evidentiary exclusion will always, or even regularly, suffice to cure all normally compensable injuries from breach of confidentiality.  It is easy to imagine reputational harms and even job-related harms, as well as increased costs of resolving the dispute that gave rise to the mediation.  As to the latter, for example, Mr. Higbie might incur delay and expense from

---

Cir. 2000) ("Because rescission is essentially an equitable remedy, it will not ordinarily be invoked where money damages—in this case damages for breach of contract— will adequately compensate a party to the contract.").

additional proceedings in the resolution of his discrimination claim because the EEO investigator, at an early stage, might have been influenced by knowledge of Mr. Higbie's alleged stonewalling in the mediation. Sometimes, perhaps often, there will be no such harms. In that case, there should be no damages. But that is a merits judgment, not one about the general unavailability of monetary relief even for proven harm from breach of this kind of contract.

2. This court has recognized an exception to Tucker Act jurisdiction for a contract claim based on "[a]n agreement 'entirely concerned with the conduct of parties in a criminal case.'" *Holmes*, 657 F.3d at 1314 (quoting *Sanders v. United States,* 252 F.3d 1329, 1334 (Fed. Cir. 2001)); *see Kania v. United States,* 650 F.2d 264, 268–69 (Ct. Cl. 1981). But that exception is not directly applicable to Mr. Higbie's case, which has nothing to do with criminal law. And the expressed rationales for the exception do not justify creating a new exception applicable here.

The criminal-case exception traces back to *Kania.* There, the Court of Claims considered whether an agreement not to prosecute made between an Assistant United States Attorney and a plaintiff was money-mandating. *Kania,* 650 F.2d at 266–68. The court held that it was not. *Id.* at 267. The court's rationale was that the agreement did not evidence that the AUSA had authority to obligate payment by the government in the event of breach. *Id.* at 268. The court thought a demonstration of authority was essential in the criminal context because criminal cases were themselves outside the purview of the Court of Claims. *Id.* at 268–69.

In *Sanders*, this court stressed the narrowness of the criminal exception articulated in *Kania*, explaining that the *Kania* exception disrupts the normal presumption of money damages for breach of contract only "where the agreement is entirely concerned with the conduct of

parties in a criminal case." *Sanders*, 252 F.3d at 1334; *see id.* at 1336. This court held that such an agreement could "theoretically, provide for monetary liability for breach . . . . But such liability should not be implied, and could exist only if there was an unmistakable promise to subject the United States to monetary liability." *Id.* at 1336. *Sanders* rested this distinctive presumption for the purely criminal context on *Kania*'s concern about the jurisdictional divide in criminal cases, noting that "the Supreme Court has made clear that claims for breach of plea agreements and other agreements unique to the criminal justice system should be brought in the courts in which they were negotiated and executed." *Id.* at 1336. Importantly, *Sanders* retained the normal presumption of money damages for breach with regard to the vast majority of contracts, including those that intersect with criminal law but have some civil component. *Id.* at 1334.

In light of these precedents, the criminal exception has no bearing here. Mr. Higbie's mediation agreement falls entirely outside of criminal law. And because mediation is not a legal setting foreign to this court's docket, Mr. Higbie's contract does not give rise to the jurisdictional concern animating *Kania* and *Sanders*.[2]

3. Outside the disavowal and criminal-case settings, it appears that only once, in *Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338 (Fed. Cir. 2008), has this court held a contract not to carry the default mone-

---

[2] The government has not argued that the jurisdictional issue here turns on whether the officials who entered into the agreement with Mr. Higbie lacked authority to obligate funds in the event of breach. Indeed, when asked at oral argument whether the officials had authority to obligate funds, the government responded that the issue of authority "go[es] to the merits of the case."

tary remedy. But, as *Holmes* indicated, *Rick's* involved a "unique cost-share agreement," *Holmes*, 657 F.3d at 1315, and a broader rationale is not apparent. *See Rick's*, 521 F.3d at 1343. There is no reason to draw from *Rick's* a lesson applicable to bar Mr. Higbie's claim at the jurisdictional threshold.

*Rick's* involved an agreement between the government and a waste facility: the government was to provide specifications detailing how the facility could be constructed and operated in a conservation-friendly manner; the facility—if it complied—was to be entitled to payments to help defray the facility's costs. *Id.* at 1341, 1344. Under the agreement, the government provided specifications and paid the facility for following them. Nevertheless, the facility was sued by a third party for allegedly violating state and federal environmental laws, and the facility eventually settled. *Id.* at 1341–42. When the facility asked the government for indemnification, the government refused, and the facility then sued the government in the Court of Federal Claims. *Id.* at 1342. This court affirmed the jurisdictional dismissal of the suit.

The parties, notably, did not contend that the contract itself was a source of substantive law that created a right to money damages. *See generally* Brief for Plaintiff-Appellant, *Rick's*, 521 F.3d 1338 (No. 07-5137), 2007 WL 2734363; Brief for Defendant-Appellee, *Rick's*, 521 F.3d 1338 (No. 07-5137), 2007 WL 3264969; Reply Brief for Plaintiff-Appellant, *Rick's*, 521 F.3d 1338 (No. 07-5137), 2007 WL 4739079. As this court noted, "[the facility] d[id] not point to a money-mandating source of law to establish jurisdiction under 28 U.S.C. § 1491(a)(1) for its breach of contract claim. Instead, [the facility] attempt[ed] to rely on the [Contract Disputes Act] as the source of its substantive right to recover money damages and to establish jurisdiction under 28 U.S.C. § 1491(a)(2)." *Rick's*, 521 F.3d at 1343.

The absence of a straight contract-based contention fits with a rationale this court expressed in discussing one of the claims that the facility actually made; namely, the absence of authority to obligate funds in the government official that signed the agreement. The Anti-Deficiency Act prohibits procurement agencies and employees from "entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." *Hercules Inc. v. United States*, 516 U.S. 417, 427 (1996) (citing 31 U.S.C. § 1341). In rejecting the facility's related claim for equitable indemnification, the court stated that "the contracting officer would have no authority under the ADA to enter into an indemnity agreement without an appropriation." *Rick's*, 521 F.3d at 1346. The government has not advanced such a rationale as a basis for the jurisdictional dismissal here. *See supra* note 2.

Perhaps a full understanding of the context in *Rick's* would make clear the inconsistency of any monetary remedy with the statutory and regulatory regime under which the cost-sharing agreement was made in that case. But whatever the reach of *Rick's*, I see no reason for extending its result to this case.

C

It may well be that Mr. Higbie cannot succeed on his damages claim for breach of contract, or even that his current pleading is deficient. *See, e.g.*, *Sarsfield v. Cnty. of San Benito*, No. 07-cv-02528 JF, 2010 WL 1929619, at *8–9 (N.D. Cal. May 12, 2010) (holding that "[p]laintiff fail[ed] to plead, let alone show evidence of, cognizable damages he suffered as a result" of an alleged breach of the confidentiality provision of a mediation agreement). But that possibility—mentioned without suggestion as to its substantiality—goes to the merits of Mr. Higbie's claim. Here, we are deciding only a threshold jurisdictional issue: whether Mr. Higbie is entitled to plead breach and seek money damages under the contract.

Because, in my view, the strong presumption that money damages are available for breach of contract answers this question in the affirmative, I respectfully dissent.